**Willie Love TALLEY, Plaintiff–Appellant,**

v.

**BRAVO PITINO RESTAURANT, LTD., Defendant–Appellee.**

No. 94–5708.

United States Court of Appeals, Sixth Circuit.

Argued July 24, 1995.

Decided Aug. 15, 1995.

Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.040, alleging race discrimination in the termination of plaintiff's employment. On appeal, the issue is whether the district court erred in determining that plaintiff failed to establish a prima facie case of race discrimination because plaintiff was not able to prove that other employees who were similarly situated to him were not subjected to the same adverse employment action. For the reasons that follow, we reverse and remand.

## I.

### A.

Defendant Bravo Pitino Restaurant, Ltd. is a Kentucky limited partnership that operates a restaurant called Bravo Pitino Restaurant ("Bravo's") in Lexington, Kentucky. Defendant has as its general partner the Kentucky corporation of R.P. Restaurants, Inc, which is owned by Jodi DiRaimo, Rick Pitino, and one other individual. Only Mr. DiRaimo has an active role in the operations of Bravo's; he serves as Bravo's general manager.

Plaintiff Willie Love Talley was employed by defendant as a sous chef at Bravo's from November 30, 1990, until April 13, 1992, when he was discharged. When plaintiff was hired, he was given an employee handbook stating that management "has the right to terminate immediately for other reasons which it determines to be serious, with concurrence of the president." Affidavit of Rick Pitino, Exhibit A–1 (quoted in Appellee's Brief at 3). It is undisputed that plaintiff was generally regarded as an excellent chef, although the parties disagree as to plaintiff's overall value as an employee. Plaintiff asserts that management was pleased with the quality of his work and that he was never reprimanded. Defendant maintains that plaintiff was prone to periods of moodiness constituting, on occasion, insubordination. Although plaintiff had no set hours and remained on the job as long as necessary to carry out his duties, defendant claims that

Philip C. Kimball (argued and briefed), Louisville, KY, for plaintiff-appellant.

Jennifer S. Goldstein, E.E.O.C., Office of Gen. Counsel, Washington, DC, for E.E.O.C.

Glenn Earl Acree (argued and briefed), Thomas, Stidham & Acree, Lexington, KY, for defendant-appellee.

Before: MILBURN and NORRIS, Circuit Judges; BECKWITH,* District Judge.

MILBURN, Circuit Judge.

Plaintiff appeals the district court's grant of summary judgment to defendant in this Title VII action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the

---

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

plaintiff often did not arrive for work sufficiently early to complete all food preparation.

On the evening of Saturday, April 11, 1992, plaintiff went with a group of nine others to socialize at a nearby restaurant. Included in the group were seven other employees of defendant, along with Kathy DiRaimo, the wife of Mr. DiRaimo, and her sister. When the restaurant's bar closed at 1:00 a.m. the next morning, Mrs. DiRaimo suggested that the group go back to Bravo's. Mrs. DiRaimo occasionally filled in for Mr. DiRaimo as general manager, and Bravo's employees generally acquiesced in her management efforts. Plaintiff was the only one with a key to Bravo's, so Mrs. DiRaimo suggested, and then ordered plaintiff to open the doors to Bravo's. Plaintiff admits opening the doors to Bravo's. In his deposition, plaintiff testified that after he opened the door he said, "Ms. DiRaimo, you know, I can get fired for this, this is not right, why are you putting me in this position." J.A. 97. Plaintiff further testified that Mrs. DiRaimo replied, "Love, if anything happens, I'll be fully responsible for it." *Id.* Plaintiff said there was no policy against opening the doors to the restaurant, but he acknowledged that he knew that he was "doing the wrong thing by opening the restaurant." J.A. 99. While at Bravo's, everyone had drinks, but no one paid for their drinks. They stayed at Bravo's until about 2:45 a.m.

On Monday, April 13, 1992, Mr. Pitino told plaintiff that he had learned of the after-hours party and that all employees who participated were fired. About a week later, when Bravo's management realized that the mass firing had left them with a significant personnel shortage, Mr. DiRaimo decided to rehire all of the terminated employees except for plaintiff. The seven employees offered re-employment are all white; plaintiff is black. In his deposition, Mr. DiRaimo stated that plaintiff, the only management personnel in the group and the only person in the group who had a key to Bravo's, essentially was responsible for the after-hours party's

occurrence because the incident could not have taken place if plaintiff had not opened the doors to Bravo's. Defendant filled plaintiff's sous chef position with a white person. According to plaintiff, the person who replaced him would testify that he was informed that "he would become the day sous chef as soon as [Bravo's] could get rid of ... plaintiff." J.A. 53.

There was also evidence in the record that both Mr. DiRaimo and Mr. Pitino had used racial slurs on a number of occasions. A restaurant valet stated that he had heard Mr. DiRaimo make disparaging remarks about blacks, including use of the terms "nigger" or "stupid nigger." J.A. 68. The lunch manager also stated that she had heard Mr. DiRaimo use the word "nigger" on occasion. J.A. 71. Plaintiff stated that he once heard Mr. DiRaimo, when instructing a utility worker not to take out the trash, state, "You don't need to be doing that. Let the niggers do it." J.A. 73.[1] Plaintiff also stated that he had heard Mr. Pitino make racist comments. Plaintiff referred to one comment Mr. Pitino had made in the presence of Mr. DiRaimo in reference to the Clarence Thomas hearings— something to the effect that "It is about time those niggers got what they deserved." J.A. 72. Plaintiff also claimed that most of the blacks at the restaurant occupied more menial positions and that he was passed over for the executive chef's position, which was filled with a less-experienced white person.

**B.**

On April 13, 1993, plaintiff Willie Love Talley filed a complaint pro se in the district court alleging that defendant Bravo Pitino Restaurant discriminated against him on the basis of race when it terminated his employment. After having obtained legal counsel, plaintiff filed an amended complaint on September 21, 1993, alleging that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Kentucky Civil Rights Act, Ky.Rev.Stat.

---

1. It is unclear whether this statement, which was made in plaintiff's affidavit dated January 3, 1994, contradicts a similar statement plaintiff made at his deposition on June 21, 1993. In the deposition, plaintiff testified that a kitchen manager told him about an incident where Mr. DiRaimo stated to the kitchen manager, "[Y]ou know those lazy niggers, you know, let those niggers take out the trash." Deposition of Willie Love Talley, June 21, 1994, at 89.

§ 344.040. On December 23, 1993, defendant filed a motion for summary judgment contending that plaintiff cannot establish a prima facie case because there were no other similarly situated employees since plaintiff was the only employee who was management personnel or who had a key to Bravo's. The district court granted defendant's motion for summary judgment in an order issued May 25, 1994. This timely appeal followed.

## II.

■ This court reviews a district court's grant of summary judgment de novo. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 603 (6th Cir.1988). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Id.* at 324, 106 S.Ct. at 2553. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Material facts are only those facts that might affect the outcome of the action under governing law. *Id.* at 248, 106 S.Ct. at 2510; *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

■ The role of the judge at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). The Supreme Court explained:

> If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Id.* at 252, 106 S.Ct. at 2512 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)) (emphasis in original); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). On appeal, we must consider all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). We now consider plaintiff's arguments in light of this standard.

### A.

Plaintiff argues that the district court erroneously awarded defendant summary judgment on plaintiff's Title VII claim based on race discrimination. Plaintiff's main argu-

ment is that the district court erred in ruling that plaintiff had not established a prima facie case of race discrimination under Title VII because plaintiff was not able to prove that other employees who were similarly situated to him were not subjected to the same adverse employment action.

■ In Title VII actions, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by the defendant. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, *Terbovitz v. Fiscal Court,* 825 F.2d 111, 114–15 (6th Cir.1987) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985)), or by showing the existence of circumstantial evidence which creates an inference of discrimination, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Under the latter approach, the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). The fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Mitchell,* 964 F.2d at 582–83. Once the plaintiff has established a prima facie case, which creates a presumption that the defendant unlawfully discriminated against the plaintiff, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Chappell,* 803 F.2d at 265. If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the discrimination was a determinative factor in his termination. *McDonnell Douglas,* 411 U.S. at

804–05, 93 S.Ct. at 1825–26. However, the ultimate burden of persuasion always remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, —— – ——, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993).

In this case, defendant conceded, for purposes of ruling on the motion for summary judgment, the first, second, and third elements of a prima facie case. Thus, the only element in dispute is the fourth element, which may be satisfied by showing that plaintiff was replaced by a person outside of the protected class or, alternatively, that similarly situated non-protected employees were treated more favorably than plaintiff.

In determining that plaintiff had not satisfied the fourth element, and consequently, that he had not established a prima facie case of race discrimination under Title VII, the district court stated that it was guided by our decision in *Shah v. General Elec. Co.,* 816 F.2d 264, 268 (6th Cir.1987). The district court relied on the following language in *Shah:* "Absent proof that other employees were similarly situated, it is not possible to raise an inference of discrimination." *Shah,* 816 F.2d at 270. It concluded that plaintiff had failed to establish a prima facie case of race discrimination because he was not able to show that he was similarly situated to the other employees who participated in the after-hours party. Accordingly, the district court granted defendant's motion for summary judgment on plaintiff's Title VII claim.

■ The district court, however, misread *Shah.* In *Shah* we stated:

However articulated, the significance of the prima facie case is that it permits an "inference of discrimination ... because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Thus, "[t]he central inquiry in evaluating whether the plaintiff has met his initial burden is whether the circumstantial evidence presented is sufficient to create an inference [of discrimination]."

The essence of a disparate treatment case is that "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or

national origin." Accordingly, "individual disparate treatment . . . cases generally require indirect evidence from which an inference of discriminatory motive may be drawn, namely, comparative evidence demonstrating that the treatment of the plaintiff differs from that accorded to otherwise 'similarly situated' individuals who are not within the plaintiff's protected group."

A Title VII plaintiff supplies this indispensable comparative evidence at the prima facie stage through the last prong of the *McDonnell Douglas* test . . . by identifying those individuals who are allegedly treated differently. This explains the *McDonnell Douglas* Court's articulation of this factor as requiring a showing "that, after his rejection, the position remained open and the employer continued to seek applicants *from persons of complainant's qualifications.*"

Proof that a Title VII plaintiff belongs to a racial minority, that he was qualified for his position, and that he was fired, without more, simply fails to present evidence that the plaintiff "was rejected under circumstances which give rise to an inference of unlawful discrimination." We do not mean to suggest that a Title VII plaintiff seeking to prove disparate treatment must always present evidence establishing the last prong of the *McDonnell Douglas* prima facie test. We do note, however, that in cases where courts have found that a Title VII plaintiff presented a prima facie case without proof that the employer continued to solicit applications, some additional evidence tended to establish the inference of discrimination. In particular, the plaintiffs were able to point to other individuals who were more favorably treated.

*Shah,* 816 F.2d at 268–69 (citations omitted). Therefore, our opinion in *Shah* made clear that showing that similarly situated non-protected employees were treated more favorably than the plaintiff is not a requirement but rather an alternative to satisfying the fourth element of the prima facie case—a plaintiff may satisfy the fourth element by showing *either* that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employ-

ees were treated more favorably than the plaintiff.

■ Moreover, in the paragraph preceding the language relied on by the district court, we stated: "As earlier noted, plaintiff's failure to show that GE attempted to fill his vacated position is not fatal if he can establish other evidence raising an inference of disparate treatment. For example, a plaintiff can establish a prima facie case by presenting evidence that similarly situated non-minority employees were not fired." *Id.* at 270. It was only after eliminating any possibility that the plaintiff in *Shah* could have established a prima facie case by showing that GE filled his vacated position that we stated that the plaintiff could not raise the necessary inference of discrimination absent proof that other employees were similarly situated. Our opinion in *Shah* makes clear that the necessary inference of discrimination cannot be established absent proof that other employees were similarly situated when that alternative is the only remaining avenue by which plaintiff could establish his prima facie case.

In this case, because plaintiff was the only one of the eight employees who participated in the incident who was management personnel or who had a key to Bravo's, the district court concluded that plaintiff was not similarly situated to the other employees who Bravo's terminated. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) ("It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects.* Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)). Consequently, the district court held that plaintiff was not able to prove that similarly situated non-protected employees were treated more favorably than he was.

■ We note that in this case plaintiff may satisfy the fourth prong of the *McDonnell Douglas* test by arguing that the other employees were similarly situated. However, it is not necessary for us to decide whether the district court's conclusion that the others were not similarly situated is correct because plaintiff presented evidence showing that his position was filled by a white person. Thus, the district court erred by failing to consider the possibility that this evidence was sufficient to establish a prima facie case.

Defendant argues that even if plaintiff presented evidence establishing a prima facie case of race discrimination, defendant is still entitled to summary judgment because plaintiff did not present any evidence that the defendant's proffered reason for firing plaintiff was pretextual. "There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 97 (6th Cir.1982) (per curiam). In fact, we have held that "if defendant ha[s] met [the plaintiff's] prima facie case with evidence of some legitimate, nondiscriminatory reason for plaintiff's rejection, the plaintiff's evidence regarding racial slurs may also have been considered on the question of whether such a reason was merely a pretext." *Id.* The district court in this case never reached the issue of whether defendant's proffered reason for firing plaintiff was pretextual. Plaintiff presented evidence of racial slurs by both Mr. DiRaimo and Mr. Pitino. Plaintiff also stated that he would present the testimony of his replacement that would suggest that defendant plotted to get rid of plaintiff and replace him with a white person. In addition, plaintiff presented evidence that he was ordered to open the restaurant by Mrs. DiRaimo, his boss' wife. In considering the pretext issue on remand, the district court should consider this evidence.

**B.**

Plaintiff also argues that the district court erred in awarding defendant summary judgment on plaintiff's Title VII claim of race discrimination because plaintiff presented direct evidence of discrimination sufficient to get the case to the jury regardless of whether plaintiff had proven the elements of a prima facie case under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As already stated, a plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, *Terbovitz,* 825 F.2d at 114–15 (citing *Trans World Airlines,* 469 U.S. at 121, 105 S.Ct. at 621), or by showing the existence of facts which create an inference of discrimination, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. In *Terbovitz* we stated:

> The *McDonnell Douglas* formula is inapplicable . . . to cases in which the Title VII plaintiff presents credible, direct evidence of discriminatory animus. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); *Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707 (6th Cir.1985). As this court stated in *Blalock,* "Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." *Id.* Direct evidence of discrimination, if credited by the fact finder, removes the case from *McDonnell Douglas* because the plaintiff no longer needs the inference of discrimination that arises from the prima facie case. Upon crediting the plaintiff's direct evidence, the district court finds facts requiring the conclusion that unlawful discrimination was at least a "motivating factor" for the employer's actions. *See id.* at 707–10. The existence of unlawful discrimination is patent, and if the employer does not propose an alternative explanation for its actions, Title VII liability will automatically follow.

*Terbovitz,* 825 F.2d at 114–15 (parallel citations omitted). In a significant footnote to that passage, we added:

> Of course, if the district court does not believe the plaintiff's proffered direct evidence, then the evidentiary framework of *McDonnell Douglas* is the proper mode of analysis. *See Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707–08 (6th Cir.1985). Thus, as we said in *Blalock:* " 'When di-

rect evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination.'" *Id.* at 708 (quoting *Thompkins v. Morris Brown College,* 752 F.2d 558, 564 (11th Cir.1985)). *Id.* at 115 n. 3.

 Defendant cites *Blalock,* 775 F.2d at 707, and argues that plaintiff presented no direct evidence that his termination was racially motivated.[2] The affidavits of two witnesses—a restaurant valet and the lunch manager—provided evidence that Mr. DiRaimo had occasionally made disparaging comments about blacks. In addition, plaintiff's affidavit provided evidence that both Mr. DiRaimo and Mr. Pitino had made racist comments. In disposing of this issue, we look to and adopt the reasoning of two cases from the Eleventh Circuit—*Miles v. M.N.C. Corp.,* 750 F.2d 867, 875–76 (11th Cir.1985), and *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 774 (11th Cir.1982). In *Miles,* the court held that racial slurs made by a manager were direct evidence of discrimination sufficient to get the plaintiff's case to the jury. *Miles,* 750 F.2d at 870. In *Lee,* the court concluded that statements by a principal about his concern that a "white presence" be maintained among the faculty at a newly integrated school in order to avoid "white flight" constituted direct evidence that the school board acted with a discriminatory motivation in firing a black teacher. *Lee,* 684 F.2d at 774–75. This case is similar to *Miles* and *Lee* insofar as plaintiff presented evidence that both Mr. DiRaimo and Mr. Pitino had made racist comments which constitute direct evidence that plaintiff's termination may have been

racially motivated.[3] Therefore, following *Miles* and *Lee,* both of which were cited with approval in *Blalock,* 775 F.2d at 707, we conclude that defendant's argument that plaintiff presented no direct evidence of discrimination is without merit. *See also Sennello v. Reserve Life Ins. Co.,* 872 F.2d 393, 395 (11th Cir.1989) (concluding that certain statements by a manager were direct evidence of discriminatory motivation in an employment decision).

 Although the district court did not explicitly address plaintiff's ability to establish his case of race discrimination by presenting direct evidence, it appears that the district court did not consider the direct evidence contained in the affidavits because it believed it was "inadmissible hearsay." Federal Rule of Evidence ("Fed.R.Evid.") 801(c) provides, "'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" Fed.R.Evid. 801(c) (emphasis added). The disparaging and racist comments allegedly made by Mr. DiRaimo and Mr. Pitino were not offered to prove the truth of the statements but to demonstrate the racial attitudes of Mr. DiRaimo and Mr. Pitino. Accordingly, the statements are not hearsay. Fed.R.Evid. 801(c); *Hunter v. Allis–Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1423 (7th Cir.1986) (holding that evidence that a supervisor called blacks "niggers" was not hearsay when offered in a Title VII action to show the supervisor's racial attitudes). Even if we agreed with the district court's conclusion that the racial slurs were hearsay, they would be admissible under the hearsay exception for statements of the declarant's then

---

**2.** Defendant also relies on *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376 (6th Cir.1993), for the proposition that "'isolated and ambiguous statements ... are too abstract, in addition to being irrelevant and prejudicial, to support a finding of ... discrimination.'" *LaPointe,* 8 F.3d at 380 (quoting *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989)). However, that rule has no application here because the repeated usage of racial slurs in this case cannot be termed isolated or abstract.

**3.** We recognize that plaintiff's statement in his affidavit that he overheard Mr. DiRaimo make a racist comment about taking out the garbage to a

utility worker is arguably contradicted by plaintiff's statement in his earlier deposition that he was told by a kitchen manager of a racist comment about taking out the garbage made to the kitchen manager by Mr. DiRaimo. We are unable to determine whether plaintiff is referring to the same comment by Mr. DiRaimo in both his affidavit and his deposition, in which case plaintiff's statements would be contradictory. We do, however, caution the district court to be aware of the alleged contradiction in considering on remand whether there was sufficient direct evidence of discrimination.

existing state of mind. Fed.R.Evid. 803(3); *Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671, 693 (6th Cir.1979) (concluding that testimony about a discriminatory purpose falls within Fed.R.Evid. 803(3)), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981). Therefore, the affidavits were not hearsay and therefore were admissible. Accordingly, the affidavits should be considered as relevant to the question of whether there was sufficient direct evidence of discrimination.

### C.

■ Plaintiff also brought a pendent state law claim under the Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.040. In order to establish violation of the Kentucky Civil Rights Act, a plaintiff must prove the same elements as required for a prima facie case of discrimination under Title VII. *See Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984). Because plaintiff presented sufficient evidence to establish his Title VII claim, plaintiff also presented enough evidence to establish his state law claim, and the district court erred in dismissing this claim. *See Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir.1988) (per curiam).

### III.

For the reasons stated, the district court's grant of summary judgment to defendant is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.