97 F.3d 1451
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William H. ADAMS, Plaintiff-Appellant,
v.
HEILIG-MEYERS FURNITURE CO., Defendant-Appellee.
 No. 95-5839.
 United States Court of Appeals, Sixth Circuit.
 Sept. 11, 1996.
 
 Before: RYAN and SUHRHEINRICH, Circuit Judges; and ENSLEN[1], Chief District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff William H. Adams appeals the district court's grant of summary judgment to his former employer, Heilig-Meyers Furniture Company ("Heilig-Meyers"), in this action alleging racially discriminatory discharge in violation of 42 U.S.C. § 2000e-e17 ("Title VII"), 42 U.S.C. § 1981, and state law. We AFFIRM.
 
 I.
 
 2
 Plaintiff was employed as a salesperson at defendant's furniture store from February 1993 until his discharge in November 1993. Plaintiff was the only African-American salesperson employed at the store. Plaintiff's performance prior to the incident precipitating his discharge was satisfactory.
 
 
 3
 On Saturday, November 20, 1993, plaintiff had a verbal dispute with a coworker, June Ingram, over who would get credit for a certain sale. The store manager, David Church, called an employee meeting that evening to discuss the store's policies for floor sales. After the meeting, plaintiff and June Ingram continued to argue. Plaintiff, June Ingram and other employees exited the store building into the parking lot. June Ingram walked toward her husband, Jim Ingram, who was waiting near their car. Plaintiff walked towards his own car. June Ingram told her husband what had happened, and Jim Ingram shouted, "Which one of the son of a bitches said it?" to which plaintiff responded "I guess you're referring to me ... [m]y mother didn't raise any son of bitches."
 
 
 4
 Plaintiff stated that Jim Ingram then "started towards him," but other witnesses stated that plaintiff "ran" or "charged" toward Jim Ingram. It is undisputed that plaintiff then struck Jim Ingram at least once in the head, knocking him to the ground. Police and rescue personnel were summoned. Jim Ingram was not hospitalized, but visited a doctor the next day.
 
 
 5
 Church immediately called the regional manager, Gene Hamic, to report the incident. Hamic instructed Church to take written statements from all witnesses on the following Monday. Church called Hamic again on Monday to report that witnesses had provided written statements. Hamic instructed Church to terminate plaintiff's employment, which Church did. June Ingram received a warning and was suspended for her role in the incident, but her suspension was eventually revoked.
 
 
 6
 Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission in January 1994. After receiving a right-to-sue letter, plaintiff filed this action in state court in September 1994. Defendant removed to federal district court and moved for summary judgment. The district court granted defendant's motion, finding a "complete absence of any evidence that racial prejudice had anything to do with the decision to discharge [plaintiff]." This appeal followed.
 
 II.
 
 7
 We review the district court's grant of summary judgment de novo. Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388 (6th Cir.1993). Summary judgment shall be entered when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 8
 Plaintiff contends that his discharge violated both Title VII and 42 U.S.C. § 1981. When a plaintiff offers no direct proof of purposeful discrimination, as in this case, the McDonnell Douglas formulation applies to claims arising under both statutes. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992).
 
 
 9
 To establish a prima facie case of racial discrimination under either statute, plaintiff must show that he was (1) a member of a protected group; (2) subject to an adverse employment decision; (3) qualified for the position; and (4) replaced by a person outside of the protected class. McDonnell Douglas, 411 U.S. at 802; Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir.1995). The fourth element may also be established by showing that plaintiff was treated less favorably than similarly situated nonprotected employees. Talley, 61 F.3d at 1246, 1247; Mitchell, 964 F.2d at 582-83. Once a prima facie case has been established, the burden shifts to defendant to proffer a legitimate nondiscriminatory reason for the employment action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); Talley, 61 F.3d at 1246. If defendant presents a legitimate reason, the burden shifts back to plaintiff to show that the discrimination was a determinative factor in his discharge. McDonnell Douglas, 411 U.S. at 804-05; Talley, 61 F.3d at 1246. The ultimate burden of persuasion remains with the plaintiff, however. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993); Talley's, 61 F.3d at 1246.
 
 
 10
 Plaintiff has clearly established a prima facie case. That is, he is a black male, fired by defendant, is indisputably qualified for his position, and he was replaced by a white female, Donna Adams. Defendant has also met its burden of establishing of articulating a nondiscriminatory reason for plaintiff's firing: the fact that plaintiff hit Jim Ingram.
 
 
 11
 Plaintiff presents three arguments to establish that defendant's proffered justification for his firing was pretext. First, he argues that a similarly situated employee outside the protected class, June Ingram, was treated more favorably. Plaintiff points out that she was not discharged despite the fact that she played a major role in the altercation between plaintiff and her husband. Furthermore, June Ingram was known to be disagreeable, paranoid, aggressive and argumentative.
 
 
 12
 We are not persuaded. Personality notwithstanding, there is no evidence in the record that June Ingram ever initiated physical violence on store property as did plaintiff or engaged in conduct necessitating police involvement.
 
 
 13
 Next, plaintiff contends that store manager David Church, who is white, had previously acted violently towards June Ingram, but had not been discharged. Plaintiff alleged that Church attempted to hit Ingram, but that she moved out of the way and he hit a cardboard box instead. Division supervisor Eugene Hamic warned Church that any similar incidents in the future would result in his termination, but did not discharge Church.
 
 
 14
 Again, we are unpersuaded. Plaintiff overlooks the fact that he and Church are not similarly situated because they are not employed in the same capacity. Talley, 61 F.3d at 1247; Mitchell, 964 F.2d at 582-83 n. 5. Church is a manager and plaintiff was a salesperson. As the district court noted, "a manager may be more valuable to the defendant than a salesperson." Secondly, there was no dispute that plaintiff intentionally hit Jim Ingram. On the other hand, Church denied any intent to strike June Ingram, and there were no witnesses to that incident who could verify June Ingram's allegation that Church had actually attempted to strike her. Finally, plaintiff actually hit Jim Ingram, whereas Church never actually struck June Ingram.
 
 
 15
 Third, plaintiff alleges that Church's incident with June Ingram was investigated more thoroughly than the incident between plaintiff and Ms. Ingram. Plaintiff contends that Hamic conducted a more thorough investigation. Again, plaintiff forgets that Hamic was the direct supervisor of Church, and that Church was the direct supervisor of plaintiff. It was only logical, and in line with company policy, for Hamic to have conducted the investigation involving Church. This contention is likewise insufficient to show pretext.
 
 
 16
 Lastly, plaintiff's attempt at "statistical evidence"--that defendant has no black store managers or black salespersons after his dismissal in any of its twenty-one stores--is insufficient to permit an inference of discrimination. See Simpson v. Midland-Ross Corp., 823 F.2d 937, 944 (6th Cir.1987) ("For statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." (internal quotation omitted)).
 
 
 17
 In sum, plaintiff has not carried his burden of persuasion that he was discharged because of his race. We therefore find no error in the district court's grant of summary judgment to defendant on his federal claims. We also find no abuse of discretion in the district court's decision to dismiss plaintiff's pendent state law claim as well. Williams v. City of River Rouge, 909 F.2d 151, 157 (6th Cir.1990).
 
 III.
 
 18
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Honorable Richard A. Enslen, Chief United States District Judge for the Western District of Michigan, sitting by designation