**Thomas C. STE. MARIE,**
**Plaintiff–Relator,**

v.

**CITY OF DAYTON, Defendant–**
**Respondent.**

**No. C–3–99–513.**

United States District Court,
S.D. Ohio,
Western Division.

March 21, 2000.

Dwight Dean Brannon, Brannon & Lowe, Dayton, OH, for plaintiff.

John J. Danish, Julia LaRita McNeil, Brent Lyle McKenzie, Dayton, OH, Stacey D. James, City Atty. Office, Dayton, OH, for City of Dayton.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 18), WITHOUT PREJUDICE TO RENEWAL; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 19) OVERRULED, WITHOUT PREJUDICE TO RENEWAL; CONFERENCE CALL SET

RICE, Chief Judge.

This litigation stems from the termination of Plaintiff Thomas C. Ste. Marie's employment as a police officer for Defendant City of Dayton. The City discharged the Plaintiff for unsatisfactory job performance after he wrecked a police cruiser and participated in an off-duty altercation with a motorist. (Complaint, Doc. # 1 at Exh. 1). In his Complaint, the Plaintiff alleges that the City violated 42 U.S.C. § 1983 by depriving him of a property interest in continued employment, without affording him due process of law. In addition to compensatory damages, he seeks a writ of mandamus ordering the City to

restore him to his former position. He also seeks a declaratory judgment that a collective bargaining agreement between the City and his union, the Fraternal Order of Police, Lodge No. 44, is contrary to state and federal law, insofar as it purports to impose a nine-month probationary period on new police officers. Finally, he seeks an award of reasonable attorney's fees that he incurred in pursuing this action. Pending before the Court are cross Motions for Summary Judgment filed by the Plaintiff (Doc. # 18) and the City of Dayton (Doc. # 19).

## I. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Factual Background* [1]

The City of Dayton operates under a "home rule" Charter adopted in accordance with the statutes of Ohio and Sections 8 and 9, Article XVIII, of the Ohio Constitution. The Plaintiff was first employed by the City on February 9, 1998, as a police recruit. On July 3, 1998, he was appointed to the position of police officer, and he served in the classified civil service, as provided by the Dayton City Charter. The City discharged the Plaintiff on March 30, 1999, ostensibly as a "probationary" employee, for unsatisfactory job performance. Although he had been working as a police officer for more than six months at the time of his discharge, he was terminated without receiving an opportunity for a hearing or for a civil service appeal.

Prior to the Plaintiff becoming a police officer on July 3, 1998, the City and his union, the Fraternal Order of Police, Lodge No. 44, operated under a 1995 collective bargaining agreement. The 1995 agreement was effective for a three-year term from May 18, 1995, through May 17, 1998. Article 32 of the 1995 agreement also provided for that agreement to continue in effect *after* May 17, 1998, "for successive periods of twelve (12) months, unless

1. For purposes of its analysis herein, the Court will view the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Defendant when reviewing the Plaintiff's Motion for Summary Judgment.

Conversely, when reviewing the Defendant's Motion for Summary Judgment, the Court will view the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff.

either party to [the][a]greement, on or before sixty (60) days prior to the expiration of such period, notifies the other party in writing of its intention to terminate [the][a]greement." (Doc. # 19 at Exh. B, Article 32).

On March 5, 1998, the Fraternal Order of Police sent the City a written notice which stated, in relevant part:

As set forth in Article 32 of the Police Officers' collective bargaining agreement ... this will constitute notification by FOP Lodge No. 44 of its intent to negotiate modifications to the existing collective bargaining agreement[ ] and to negotiate successor agreements.

The official Notice to Negotiate forms and copies of this letter will be sent to the State Employment Relations Board prior to the sixty (60) day period set forth in the law....

The Lodge is interested in commencing the negotiations at the earliest possible date so that the parties will be afforded the fullest opportunity to reach well-reasoned and fair settlements....

(*Id.* at Exh. C).

The City and the Fraternal Order of Police subsequently reached a new collective bargaining agreement in early 1999, and it contained a retroactive effective date of May 18, 1998. (*Id.* at Exh. D). Article II, Section 5 of the new collective bargaining agreement provides for a nine-month probationary period following an individual's appointment to the position of police officer. (*Id.*). In relevant part, the 1999 agreement states that "[d]uring said probationary period, employees covered hereunder may be disciplined, reprimanded, suspended, terminated, or relieved of duty, without a showing of just cause.... Further, the terms and conditions arising out of Article 11, Discipline and Due Process, and Article 12, Grievance Procedure, with regard to disciplinary matters do not apply to probationary employees. All terms and conditions of this Agreement shall apply to probationary employees other than as set forth herein." (*Id.*).

In contrast to the 1995 and 1999 collective bargaining agreements, Section 99 of the Dayton City Charter provides that "[a]n appointment or promotion shall not be deemed complete until a period of probation not to exceed six months has elapsed, and a probationer may be discharged or reduced at any time within the said period of six months, upon the recommendation of the head of the department in which said probationer is employed, with approval of the majority of the Board." Section 100 of the Dayton City Charter provides that "[a]n employee shall not be discharged or reduced in rank or compensation until he has been presented with reasons for such discharge or reduction, specifically stated in writing, and has been given an opportunity to be heard in his own defense. The reason for such discharge or reduction and any reply in writing thereto by such employee shall be filed with the Board." Finally, Section 101 of the Dayton City Charter provides that "[a]ny employee of any department in the city in the classified service who is suspended, reduced in rank, or dismissed from a department by the director of that department or the City Manager, may appeal from the decision of such officer to the Civil Service Board, and such Board shall define the manner, time, and place by which such appeal shall be heard. The judgment of such Board shall be final."

III. *Analysis*

In the present case, the parties dispute whether the Plaintiff was subject to a nine-month probationary period, as set forth in both the 1995 and 1999 collective bargaining agreements, or whether he was subject to the six-month probationary period con-

tained in the Dayton City Charter. As noted above, the Plaintiff had been employed as a Dayton police officer for more than six months, but less than nine months, at the time of his termination. If a six-month probationary period applied, then the Plaintiff completed his term of probation in January, 1999, and he had a constitutionally protected property interest in his job at that time. (*See* Decision and Entry, Doc. # 17 at 18–22). On the other hand, if a nine-month probationary period applied, then the Plaintiff did not have a constitutionally protected property interest in his job, and he was not entitled to due process protections before being terminated. (*Id.*). As noted, *supra*, the duration of the Plaintiff's probationary status is significant, because he worked as a Dayton police officer for more than six months, but less than nine months, and he was fired without receiving any due process protection.

In his Motion for Summary Judgment, the Plaintiff contends that he was subject to the six-month probationary period set forth in the Dayton City Charter, because the 1995 collective bargaining agreement expired before he became a Dayton police officer, and the 1999 agreement was not adopted until more than six months later. In support, the Plaintiff argues that when no collective bargaining agreement exists, a public employer is subject to the requirements of state laws, local ordinances and *city charter provisions*. *See, e.g., State ex rel. International Union of Operating Engineers v. City of Cleveland*, 62 Ohio St.3d 537, 584 N.E.2d 727 (Ohio 1992); *see also State ex rel. Chavis v. Sycamore City School Dist. Board of Ed.*, 71 Ohio St.3d 26, 29, 641 N.E.2d 188, 192 (Ohio 1994) ("A collective bargaining agreement does not prevail over conflicting laws where ... no collective bargaining agreement is in force."); *State ex rel. Ciccolelli v. Medina*, 1992 WL 292429 (7th Dist. Oct. 5, 1992)

(reasoning that when a collective bargaining agreement expires and has no effect, applicable state statutes control in its place). Based on his belief that the six-month probationary period applied to him, the Plaintiff also argues that the Fraternal Order of Police could not lawfully bargain away his property interest in his job by entering into the 1999 collective bargaining agreement. As noted above, the 1999 agreement purported to be retroactive to May 18, 1998, and it included the longer nine-month probationary period also found in the 1995 agreement. If the 1999 agreement *did* apply to the Plaintiff retroactively, then his term of probation had not expired when the City terminated his employment on March 30, 1999. In support of his Motion, however, the Plaintiff argues that retroactive application of the 1999 agreement to lengthen his term of probation is unconstitutional, because it would deprive him of a property interest that arose, pursuant to the Dayton City Charter, when he completed six months as a Dayton police officer.

In its cross Motion for Summary Judgment, the City argues that the 1995 agreement *had not* expired when the Plaintiff became a Dayton police officer on July 3, 1998. In support, the City relies on Article 32 of that agreement, which provided for the agreement to continue in effect after its May 17, 1998, expiration date unless either party gave 60 days' written notice of an intent to terminate. According to the City, the March 5, 1998, written notice from the Fraternal Order of Police did not purport to *terminate* the 1995 agreement. Instead, the letter merely expressed the union's desire to *modify* that agreement. As a result, the City contends that the 1995 collective bargaining agreement remained in effect when the Plaintiff became a Dayton police officer on July 3, 1998. Therefore, the City argues, the

Plaintiff was subject to the nine-month probationary period set forth in that 1995 agreement.

Having reviewed the parties' Memoranda and supporting evidentiary materials, the Court must overrule both of the pending Motions for Summary Judgment, without prejudice to renewal. In reaching this conclusion, the Court finds a genuine issue of material fact as to whether the Fraternal Order of Police and the City of Dayton intended the 1995 agreement to terminate, pursuant to its May 17, 1998, expiration date, or whether they intended it to remain in effect for an additional 12 month period. The Sixth Circuit has recognized that "whether [a collective bargaining agreement] continued in force during negotiations depends on the consequence intended by the parties when they exchanged notices of their desire to amend the contract." *Chattanooga Mailers' v. Chattanooga News Free Press*, 524 F.2d 1305, 1312 (6th Cir.1975), *overruling on other grounds recognized by Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 404 (6th Cir.1988). When parties present conflicting evidence on the crucial issue of their intent, a court cannot enter summary judgment. *Id.*

In the present case, the record contains substantial evidence from which a trier of fact could conclude that the Fraternal Order of Police *did* provide the City of Dayton with the required written notice of its intent to terminate the 1995 collective bargaining agreement, effective May 17, 1998. *First,* the March 5, 1998, letter from the Fraternal Order of Police to the City expressly mentioned the 60 day written notice requirement for termination set forth in Article 32 of the 1995 agreement. (Doc. # 19 at Exh. C). *Second,* the fact that the Fraternal Order of Police sent the letter on March 5, 1998, is significant, because it suggests an intent to comply with the 60-

day notice requirement, as the 60–day window would have closed on approximately March 17, 1998. *Third,* the March 5, 1998, letter expressed a desire to negotiate "successor agreements," which suggests that the Fraternal Order of Police did not intend to continue operating under the 1995 agreement. (*Id.*). *Fourth,* the March 5, 1998, letter contained language suggesting that time was of the essence. (*Id.*). Such language would have been unnecessary if the union had intended to continue operating under the 1995 agreement. *Finally,* the Court notes that the Fraternal Order of Police and the City of Dayton made their subsequent 1999 collective bargaining agreement *retroactive* to May 18, 1998. Retroactive application of the new agreement would have been unnecessary if the union and the City had intended for the 1995 agreement to renew for another 12–month term after May 17, 1998.

On the other hand, the record also contains evidence from which a trier of fact could find that the Fraternal Order of Police *did not* provide the City of Dayton with written notice of its intent to terminate the 1995 collective bargaining agreement. *First,* the March 5, 1998, letter from the union to the City expressed a desire to "negotiate modifications to the existing collective bargaining agreements." (*Id.*). It would have been difficult for the union and the City to "modify" an agreement that the union intended to terminate completely. *See Chattanooga Mailers*, 524 F.2d at 1312 (" 'A notice of modification is not a notice of termination and does not affect termination of the contract.' "). *Second,* the City has provided the Court with an affidavit from Maurice Evans, an employee of the City of Dayton Human Resources Department. In relevant part, Evans avers:

4. That I have personal knowledge of the negotiations that occurred between the Fraternal Order of Police and the City of Dayton in 1998 and 1999.

5. That at no time prior to the date that the Fraternal Order of Police and the City of Dayton entered into the 1998 collective bargaining agreement ... did the Fraternal Order of Police or the City of Dayton ever communicate an intention to terminate the 1995 collective bargaining agreement.

(Doc. # 19 at Exh. A).[2]

Given the foregoing conflicting evidence, the Court finds a genuine issue of material fact as to whether the 1995 collective bargaining agreement terminated on May 17, 1998, or whether it renewed for another 12-month term. In light of this factual dispute, the Court cannot sustain either of the pending Motions for Summary Judgment. In its Motion, the City argues only that the Plaintiff was subject to the nine-month probationary period contained in the 1995 agreement, because that agreement remained in effect. The Court has found a factual dispute on that issue, however, and the City has not addressed the constitutionality of retroactively depriving the Plaintiff of a property interest in his job *if* the six-month probationary period in the Dayton City Charter applied. Consequently, the Court will overrule the City's Motion for Summary Judgment (Doc. # 19).

The Court also will overrule the Plaintiff's Motion for Summary Judgment (Doc. # 18). In order to prevail in this litigation, the Plaintiff must establish (1) that the 1995 agreement expired on May 17, 1998 (thereby subjecting him to the six-month probationary period in the Dayton City Charter), *and* (2) that the Fraternal Order of Police could not bargain away a property interest in his job that arose after he completed the six-month probationary period by giving the terms of the

1999 agreement (in particular its nine-month probationary period) retroactive effect. Given that the Court has found a genuine issue of material fact on the former issue, the Plaintiff is not entitled to judgment as a matter of law, without respect to his arguments on the latter issue.

## IV. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Plaintiff's Motion for Summary Judgment (Doc. # 18) is overruled, without prejudice to renewal after resolution of the factual dispute identified above. Likewise, the Defendant's Motion for Summary Judgment (Doc. # 19) is also overruled, without prejudice to renewal after resolution of the same factual dispute.

Counsel will take note that a telephone conference call has been scheduled for 8:45 a.m. on Friday, April 6, 2001, to set a hearing date to resolve the issues discussed herein, and to set a new trial date and other dates leading to the conclusion of this litigation on an as-needed basis.

---

2. Evans appears to refer to the 1999 agreement between the Fraternal Order of Police and the City of Dayton as the "1998 collective bargaining agreement" because of its retroactive effect.