Paul L. HEGWOOD, Plaintiff,

v.

PHARMACIA/UPJOHN, Defendant.

No. 1:96–CV–780.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 20, 1997.

**730**

---

Paul L. Hegwood, Kalamazoo, MI, pro se.

Kurt N. Sherwood, James B. Thelen, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for defendant.

### *OPINION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

HILLMAN, Senior District Judge.

This is an action alleging race and sex discrimination in employment, filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Defendant has moved for summary judgment and has provided extensive supporting documentation. Plaintiff, proceeding *pro se,* has failed to file a response to the motion, despite notice and an extension of time. Upon review, defendant's motion for summary judgment is **GRANTED.**

### *BACKGROUND*

As noted, plaintiff failed to file any substantive responsive pleading to defendant's motion. Instead plaintiff belatedly filed a half-page declaration of his continuing intent

to pursue his discrimination claim. As a result, the facts must be taken from defendant's submissions. Those submissions include substantial portions of plaintiff's own deposition and certain written warnings plaintiff acknowledged in his deposition as having been received. Accordingly, while the facts must be taken in the light most favorable to plaintiff on review for summary judgment, defendant's factual submissions are essentially uncontested.

Plaintiff Paul Hegwood was an employee of defendant Pharmacia/Upjohn beginning in the early 1980s and ending with his discharge on August 30, 1995. Plaintiff served as food service worker in the dishroom of defendant's cafeteria. Plaintiff had responsibility for washing dishes and pots and pans, as well as a variety of cleaning responsibilities in the kitchen and lunchroom.

Beginning in 1993, plaintiff began to have difficulties interacting with his coworkers. Plaintiff stated in his deposition that he made a conscious decision to "separate himself" from his coworkers and to avoid interactions with them. Apparently as a result of this decision, plaintiff began to ignore coworkers, to refuse to respond to their inquiries and overtures and to walk away from conversations. Hegwood dep. at 29–44.

Following a rise in tensions, Hegwood's supervisors discussed with him the importance of teamwork and the fact that teamwork was a criterion of satisfactory work performance. Affidavit of M. Hilary Thompson, ¶ 6. Plaintiff's then-supervisor, Matt A. Niesz, met with plaintiff regarding the need for improvement and issued a memorandum on March 9, 1993, setting forth the problems.

Subsequently, plaintiff continued to have problems and, on October 13, 1993, he became involved in an argument with a coworker about job assignments. Plaintiff admits to having told his coworker to "shut the F–up talking to me" and threatening her that he would "F–[her] up" if she ever touched him again. Hegwood dep. at 53, 55–56; *see also* Exhibit 2 to defendant's motion. Plaintiff thereafter was placed on "First Performance Warning" for six months. *See* Exhibit 3 to defendant's motion; Hegwood dep. at 56–57.

In November 1993, plaintiff was transferred to another building to work in a different dishroom. Plaintiff was removed from First Performance Warning status on April 27, 1994. Plaintiff's performance evaluation for the period between June 1994 and December 1994 continued to show a need for improvement in relationships with coworkers. *See* Exhibit 5 to defendant's motion. In addition, plaintiff began to demonstrate other performance problems such as failure to complete work, failure to follow set priorities and disregard of supervisory orders regarding which tasks should be completed at given times. Hegwood dep. at 115–117; Thompson affidavit at ¶ 7.

In January 1995, plaintiff's then-supervisor, Hilary Thompson, sat down with plaintiff to discuss plaintiff's problems with his co-workers. Thompson advised plaintiff that she would try to work with him and that, if he needed help with any problems, services were available. Plaintiff concluded that Thompson was implying he had a substance abuse problem. He walked out of the conference with Thompson and left the building without permission. He proceeded to another of defendant's buildings, where he offered to submit to a drug test. Hegwood dep. at 131–132.

As a result of this interaction and the other problems, plaintiff was again placed on First Performance Warning status. Hegwood dep. at 139–140; Exhibit 7 to defendant's motion. After two weeks on this status, plaintiff failed to follow directions of his team leader and was suspended for two weeks. When he returned to work on January 24, 1995, he was placed on Final Performance Warning status. *See* Exhibit 8 to defendant's motion. When he was returned to work, plaintiff was obliged to follow the terms of the warning and was required to meet weekly with his new supervisor, Mike Cooper, and team leaders Terry Dowdy and Jason McGraw. Plaintiff also was provided a new task list. On final warning status, plaintiff was obligated to follow the terms of his warning or be discharged. Hegwood dep. at 139–140, 154–57; Thompson affidavit at ¶ 9; Exhibit 8.

Plaintiff successfully completed final warning status and was removed from that status on July 26, 1995. Hegwood dep. at 167–68; Exhibit 10. As plaintiff admits, he was advised that he must maintain the standards set forth in the final warning or risk further discipline or discharge. Hegwood dep. at 168. Plaintiff, however, continued to have problems getting his work done. Hegwood dep. at 172–73. He began to come to work early and to stay late, despite being advised not to work extra hours. Hegwood dep. at 173.

On August 30, 1995, plaintiff again arrived at work an hour early. His immediate supervisor, Jason McGraw, told him to stop working and to wait for his shift. Hegwood dep. at 173–174. Plaintiff walked away from his supervisor and continued to work. He stopped working only when subsequently ordered by a higher level manager to stop work and sit down. Cooper affidavit at ¶¶ 6–8.

Plaintiff admitted that he knew McGraw was his supervisor and that he knew before he came into work that he had previously been ordered not to come in early. Hegwood dep. at 173. He also admitted that he had been given a direct order to stop working, which he disobeyed. On the basis of his insubordination, plaintiff was discharged on August 30, 1995. Hegwood dep. at 176; Cooper affidavit at ¶ 9; Exhibit 10.

Following his suspension and placement on warning status in January 1995, plaintiff filed a charge with the Michigan Department of Civil Rights (MDCR) and the Equal Employment Opportunity Commission (EEOC). Plaintiff filed a second charge shortly after his discharge. In both charges, plaintiff, who is black, alleged race discrimination, sexual harassment and retaliation. Those charges were dismissed by the MDCR and EEOC on August 2, 1996 and August 5, 1996, respectively.

### STANDARD OF REVIEW

On a motion for summary judgment, the court must consider all pleadings, depositions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. In-*

*dus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate that there exists a genuine issue for trial. *Id.*

In order to prove that a triable issue exists, the nonmoving party must do more than rely upon allegations, but must come forward with specific facts in support of his claim. *Id.* After reviewing the whole record, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). " '[D]iscredited testimony is not [normally] considered a sufficient basis' " for defeating the motion. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514 (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984)). In addition, where the factual context makes a party's claim implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56; *Street,* 886 F.2d at 1480.

### DISCUSSION

#### A. *Race Discrimination*

Plaintiff alleges that he was discriminated against on the basis of race in violation of Title VII. Plaintiff stated in his deposition that he has no direct evidence of discrimination, and relies solely on his own belief that race was a motivating factor in his discharge. Hegwood dep. at 183–84. In the absence of direct evidence of discrimination, a plaintiff may make out a prima facie claim of race discrimination by proving the following: (1) that he was a member of a protected class; (2) that he was qualified for his job; (3) that he was discharged from his position; and (4) that he was replaced by someone outside the protected group. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995). The fourth element may also be shown by proof that similarly situated persons not in the protected class were treated differently than plaintiff. *See Talley,* 61 F.3d at 1246.

Once plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate nondiscriminatory reason for the employment action. *Id.* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981)). If the defendant articulates a legitimate reason, the burden shifts back to plaintiff to demonstrate that discrimination was a determinative factor in the termination. *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26. The burden of persuasion at all times remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In addressing the fourth element of the prima facie case, the Sixth Circuit has consistently observed that to be considered "similarly situated," the individuals with whom plaintiff seeks to compare himself must be similarly situated in all respects. *Talley,* 61 F.3d at 1247. Such individuals "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

■ Here, plaintiff has made no effort to demonstrate that any individual was similarly situated in any respect. Plaintiff claimed to the MDCR and EEOC that he was treated more harshly than other employees for similar or more severe employment conduct.

However, plaintiff has not articulated any particulars concerning the conduct he would compare with his own. In fact, plaintiff has done no more than allege that "others" were treated more favorably.

██ Moreover, plaintiff must demonstrate that such comparables were members of a non-protected group. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992). In his deposition, plaintiff conceded that the others he would compare himself with include both white employees and black employees. Hegwood dep. at 73–74, 184. He apparently conceded the same fact to the MDCR. *See* Exhibit 13 (MDCR Notice of Disposition, noting that plaintiff conceded that comparatives were other black employees).

As a result, plaintiff has failed to offer any evidence that would prove the fourth element of his race discrimination claim. Accordingly, because plaintiff has failed to make out a prima facie case, defendant is entitled to summary judgment on the race discrimination claim.

### B. *Racial Harassment*

██ Plaintiff also alleges that he was subjected to racial harassment at his employment. In order to make out a claim of racial harassment, plaintiff must prove (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on race; (4) that the harassment had the effect of unreasonably interfering with his work performance and creating an intimidating, hostile, or offensive work environment; and (5) respondeat superior liability. *See Boutros v. Canton Regional Transit Auth.,* 997 F.2d 198, 203 (6th Cir.1993). A hostile work environment is not shown by stray, isolated or ambiguous comments. *See Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 620 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Gagne v. Northwestern National Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989).

██ Plaintiff's only allegations of racial harassment are insufficient to withstand summary judgment. Plaintiff testified at his deposition concerning only two alleged comments. First, he claims that one of his co-workers commented that he was "dumb, but, yet, so smart." Hegwood dep. at 178. Nothing about this comment suggests racial motivation. It therefore is insufficient to suggest racial hostility, much less create a hostile work environment. *Rabidue,* 805 F.2d at 620.

Second, plaintiff complains that he found a cartoon in another employee's work area that he found to be racially harassing. Plaintiff admits that the cartoon was not located in his own work area, but in the work area of another employee. He also admits that he has no idea who placed the cartoon there. He further admits that he never complained about the cartoon to any supervisor or manager and does not know if they were aware of the cartoon.

Plaintiff's evidence, even if properly attributable to defendant, is the kind of isolated incident that fails to establish racial harassment. *See Gagne,* 881 F.2d at 314; *Rabidue,* 805 F.2d at 620. Accordingly, defendant's motion for summary judgment on plaintiff's racial harassment claim is granted.

### C. *Retaliation*

██ Plaintiff has alleged that he was subjected to retaliation in his workplace after he filed his first civil rights complaint with the MDCR and EEOC. Under Title VII, retaliation for the exercise of rights provided under the statute is itself a violation of the statute. *See* 42 U.S.C. § 2000e–3(a) In order to establish a prima facie claim of retaliation, plaintiff must prove the following elements: (1) that the plaintiff engaged in activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). Once the employee has set forth a prima facie case of retaliation, the employer has the burden to articulate a legitimate, nondiscriminatory reason for the employment action. *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.,* 783

F.2d 50, 54 (6th Cir.), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986). The plaintiff may then rebut the legitimacy of defendant's articulated reason by producing "credible evidence" that such a reason was a mere pretext for discrimination. *See id.*

Plaintiff has provided no evidence that any employment action was causally connected to the filing of an EEOC charge. He admitted at his deposition that he has no evidence to support the claim. Hegwood dep. at 210–211. He stated that has heard no remarks and seen no documents that would support his contention that actions were taken in retaliation for filing his first claim. In fact, at his deposition, plaintiff relied solely on the fact that his discharge followed eight months after he filed his administrative complaint. Hegwood dep. at 210–211.

■ "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of ... discrimination." *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). While temporal proximity, when sufficiently close, may raise a retaliatory inference, *see Burrus v. United Telephone Co.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982), passage of eight months is not strongly suggestive of retaliatory motive. Moreover, such a connection is unsupported where, as here, plaintiff had been removed from final warning status during the intervening period, following adequate completion of the disciplinary requirements. Only upon undisputed new conduct amounting to insubordination was plaintiff discharged. Such a pattern clearly undermines any inference of retaliatory motive. In addition, the records reflect that plaintiff had been subjected to discipline for similar conduct during the year preceding his filing of a charge. Where the subsequent disciplinary action is consistent with prior employer disciplinary actions, the inference of retaliation is undermined *See Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1067 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

■ Further, even if plaintiff had successfully set forth a prima facie claim of retaliation, defendant has articulated a legitimate nondiscriminatory reason for its action. Plaintiff admits the conduct and has failed to introduce any evidence to suggest that defendant's asserted motive is pretextual. *See Jackson,* 783 F.2d at 54.

Accordingly, plaintiff has failed to establish a genuine issue of material fact on his claim of retaliation, and defendant is entitled to summary judgment.

### D. *Sexual Harassment*

■ Plaintiff has not specifically included a count of sexual harassment in his amended complaint. He does, however, implicitly raise a claim of sexual harassment by complaining of allegedly sexual conduct on the part of one of his supervisors, Hilary Thompson. Specifically, plaintiff contends that on one occasion, Ms. Thompson asked him to clean the oven filters because he was a strong male with "pretty big muscles." Hegwood dep. at 92. Plaintiff interpreted the comment to have sexual overtones, believing it to be the type of comment that "should be shared with, you know, [an] intimate partner, not with just some stranger off the street." Hegwood dep. at 94. On the basis of this comment, plaintiff stated in his EEOC charge that his "supervisor also subjected [him] to sexual harassment," and that he "rejected her advancements." Hedgwood dep. at 96. Because plaintiff is proceeding *pro se,* the court will consider whether sufficient facts support a claim of sexual harassment.

Case law recognizes two distinct types of sexual harassment: (1) harassment that creates an offensive or hostile environment; and (2) quid pro quo harassment, in which a supervisor demands sexual favors as a condition for job benefits. *See Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 182 (6th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). The claim of hostile work environment harassment was recognized by the Supreme Court in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Supreme Court held that "Title VII affords

employees the right to work in an environment free from discriminatory intimidation, ridicule and insult . . . ." *Id.* at 65, 106 S.Ct. at 2404.

▇▇ The Sixth Circuit subsequently has held that to state a claim of hostile environment sexual harassment for conduct of a supervisor, plaintiff must show that (1) he is a member of a protected class; (2) he was subject to unwelcomed sexual harassment; (3) the harassment was based on his sex; (4) that the harassment interfered with his work performance and created a hostile work environment; (5) that the action was foreseeable or within the scope of the supervisor's employment; and (6) the company failed to respond adequately and effectively to the problem. *See Kauffman,* 970 F.2d at 183.

Plaintiff cannot establish a claim of hostile environment sexual harassment. First, a substantial question exists whether the comment, when made, was sexually harassing at all. While mention of gender may in the abstract raise concerns about different treatment based on sex, the obvious context suggests that the supervisor's concern lay with plaintiff's physical strength required for the particular task, not with his gender. Even if such a comment could be considered to have sexual overtones, plaintiff has failed to demonstrate how an isolated comment during over a dozen years of employment could interfere in a reasonable plaintiff's ability to work. In fact, plaintiff has not alleged that the comment in any way affected his work performance. Standing alone, the allegation as a matter of law is insufficient to support a claim of hostile environment sexual harassment. *See Vinson,* 477 U.S. at 66, 106 S.Ct. at 2405 ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (quotations omitted). *See also Rabidue,* 805 F.2d at 620 (hostile environment claim requires more than one isolated incident).

▇▇ Plaintiff's claim of quid pro quo sexual harassment also must fail. In order to state a claim of quid pro quo sexual harassment, the plaintiff must assert and prove: (1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability. *Kauffman,* 970 F.2d at 186.

Without more, the supervisor's comment cannot reasonably be interpreted as a sexual advance or request for sexual favor. I am persuaded that no reasonable jury could conclude that reference to an employee's strength in the context alleged constituted a sexual advance.

Accordingly, defendant is entitled to summary judgment on plaintiff's sexual harassment claim.

### E. *National Origin Discrimination*

▇▇ Plaintiff has checked a box on his complaint form indicating that he alleges national origin discrimination. Plaintiff, however, has alleged no facts in support of such a claim. Moreover, plaintiff failed to raise any claim of national origin discrimination in his EEOC charges. The scope of plaintiff's Title VII complaint in federal court is limited to the scope of the EEOC investigation that could reasonably be expected to grow out of the administrative charge. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir.1991). The administrative records do not suggest that the agency ever considered national origin discrimination.

Accordingly, the claim of national origin discrimination is both unsupported and beyond the scope of the administrative charge. Defendant, therefore, is entitled to summary judgment on the claim.

### *CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**

and plaintiffs complaint is hereby dismissed in its entirety with prejudice.