**WREN INDUSTRIES, INC.,
et al., Plaintiffs,**

v.

**VERSON ALLSTEEL PRESS,
et al., Defendants.**

No. C–3–98–355.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 6, 1999.

Kevin Charles Connell, Freund Freeze & Arnold—3, Dayton, OH, for Wren Industries Inc., Federal Insurance Co, plaintiffs.

Michael Garth Moore, Columbus, OH, Mark Hellner, Chicago, IL, for Verson Allsteel Press, Allied Products Corporation, defendants.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 19)

RICE, Chief Judge.

Plaintiff Wren Industries, Inc. ("Wren"), is in the business of producing parts for the automotive industry.[1] In 1984, Wren purchased a 500–ton punch press from the Defendants.[2] In 1989, The Defendants repaired the drive shaft of that punch press, by welding a section of that shaft. In 1994, the drive shaft broke, causing damage to the punch press and rendering its braking mechanism inoperable. No one was injured, nor was any property, other than the punch press, damaged. As a consequence of damages to the punch press, Wren incurred expenses to repair

---

1. This case is before the Court on the Defendants' Motion for Summary Judgment (Doc. # 19); therefore, the Court sets forth the facts giving rise to this litigation in the manner most favorable to the Plaintiffs. Since the parties have neither supported nor opposed that motion with evidence, this Court derives those facts and circumstances from the Plaintiffs' Complaint. Parenthetically, under Fed. R.Civ.P. 56(c), a court, when ruling on a motion for summary judgment, may consider pleadings, as well as affidavits, depositions and other types of evidence. Of course, Fed. R.Civ.P. 56(d) provides that when a motion for summary judgment has been supported by evidence, an adverse party may not rely upon the allegations or denials contained in its pleadings; rather, it must present affidavits or other evidence showing that there is a genuine issue of material fact. Herein, since the Defendants have not supported their motion with affidavits or other evidence, it is proper to consider the allegations in the Plaintiffs' Complaint when setting forth the facts and circumstances upon which this lawsuit is based.

2. The Defendants are Allied Products Corporation and Verson Allsteel Press, which is alleged to be a Division of Allied.

the press, to replenish depleted inventory and for additional labor. In addition, it suffered harm from the loss of the use of the machine and of business.

Wren and its insurer, Federal Insurance Company ("Federal"),[3] initiated this litigation in the Common Pleas Court for Miami County, Ohio, from whence the Defendants timely removed it on the basis of diversity of citizenship.[4] *See* Doc. # 1. In their Complaint,[5] the Plaintiffs set forth nine claims for relief. With the first four of those claims, the Plaintiffs set forth claims under Ohio's Products Liability Statute, Ohio Revised Code § 2307.71, *et seq.* In their Fifth Claim for Relief, the Plaintiffs claim that they are entitled to recover under a negligent repair theory, alleging that the Defendants owed them a duty of reasonable care, when the punch press was repaired in 1989, and breached that duty by failing to employ ordinary skill in performing that task. In their Sixth Claim for Relief, the Plaintiffs set forth a claim of breach of express and/or implied warranties, asserting that Wren entered into a contract with Defendants in 1989, pertaining to the repair of the shaft of the punch press, whereby it was expressly or impliedly warranted that the drive shaft would adequately operate that machine and that those warranties were breached as evidenced by the failure in 1994. In their Seventh Claim for Relief, the Plaintiffs set forth a claim of breach of implied warranties of merchantability and fitness for intended purpose, contending that during the course of its dealings with Defendants, Wren fully informed them of the purposes

to which it intended to put the punch press, and that it relied upon those warranties when it paid for the punch press and for the repair to the drive shaft of that machine. In their Eighth Claim for Relief, the Plaintiffs set forth a claim of breach of contract, alleging that, in 1989, the Defendants agreed to repair the drive shaft of the punch press in a workmanlike manner, which they failed to do. In their Ninth Claim for Relief, the Plaintiffs set forth a derivative claim of subrogation on behalf of Federal, which is based upon the other claims asserted in the Plaintiffs' Complaint. With each of the claims, the Plaintiffs seek to recover compensation for the lost use of that machine and of business, additional labor costs, repair costs, rigging costs, inspection costs and costs incurred to replenish its depleted inventory.

This case is now before the Court on the Defendants' Motion for Partial Summary Judgment (Doc. # 19), with which they request such relief on the Plaintiffs' Fifth through Ninth Claims for Relief.[6] As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment (partial or otherwise), following which it will turn to the parties' arguments in support of and in opposition to the Defendants' motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

3. Federal paid Wren $235,023.53 of the $245,488.59, which the latter suffered in damages as a result of the breakdown of the punch press in 1994. Therefore, Federal has joined as a party Plaintiff and has asserted a subrogation claim in that amount.

4. The Plaintiffs had previously filed essentially the same lawsuit in the Court of Common Pleas for Miami County; however, they voluntarily dismissed that litigation.

5. A copy of the Plaintiffs' Complaint is attached as an exhibit to the Defendants' Notice of Removal (Doc. # 1).

6. According to the Defendants, the Plaintiffs have agreed to dismiss their First through Fourth Claims for Relief, since Judge Jeffrey Welbaum dismissed similar claims during the nearly identical first lawsuit filed by the Plaintiffs. *See* Doc. # 19 at 3. The Plaintiffs seem to concur with the Defendants' assertion. *See* Doc. # 20 at 1 ("The remaining allegations are Counts Five through Nine"). Nevertheless, this Court notes that the parties have not to this date filed a stipulated dismissal of those claims.

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. In-dus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th

Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Initially, the Defendants argue that they are entitled to summary judgment on the Plaintiffs' Fifth through Ninth Claims for Relief, since damages for economic loss (as opposed to an injury to a person or property) cannot be recovered under the law of Ohio.[7] In support of that argument, the Defendants rely upon *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.,* 42 Ohio St.3d 40, 537 N.E.2d 624 (1989). Therein, Chemtrol, which was in the business of manufacturing and selling pressure-sensitive labeling stock, purchased an industrial dryer to be used in its manufacturing processes from Midland–Ross. The dryer had a heat recovery system which was designed to capture waste heat, thus allowing it to be reused and reducing the fuel requirements of the dryer. On two occasions during the winter following the installation of the dryer, Chemtrol's entire manufacturing process was shut down as a result of a malfunction on another machine. Although the dryer's furnace properly shut down, an air intake fan failed to do so, thus continuing to bring cold air into the dryer and causing its hot water coils, which were part of the heat recovery system, to freeze and to rupture. The failure of the fan to cease operating did not cause

either personal injuries or damage to any other property than to the dryer itself. Chemtrol claimed to have suffered damages in the form of additional energy costs, costs to repair the dryer and increased expenses of production incurred as a result of the dryer being inoperable while being repaired. Chemtrol sued its insurer, which filed a third-party complaint against Midland–Ross, setting forth claims of strict liability in tort, negligence and breach of contract. The trial court granted Midland–Ross' motion for summary judgment, and the court of appeals affirmed. Upon further appeal, the Ohio Supreme Court initially noted that an insurer stands in the shoes of its insured and, therefore, treated the insurance company's claims as if they had been asserted by Chemtrol. With respect to the question of whether the purchaser of a product could maintain an action against the seller, under theories of strict liability in tort and negligence, when the former suffered only an economic loss and damage to the product itself, the Ohio Supreme Court wrote, in paragraph two of the syllabus:

> 2. A commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damage to other property, the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.

*Id.,* 537 N.E.2d at 626.

■ As an initial matter, the Court notes that the Plaintiffs' Sixth through Eighth Claims for Relief, as well as that portion of their Ninth Claim which is predicated upon those three claims, are based upon contract theories, rather than being tort claims. Therefore, *Chemtrol* does not prevent the Plaintiffs from maintaining those claims. Accordingly, the Court rejects the Defendants' assertion that they

---

7. The parties are in agreement that the sub- stantive law of Ohio governs this litigation.

are entitled to summary judgment on those claims on the basis of *Chemtrol.*[8]

■ In their Fifth Claim for Relief, however, the Plaintiffs set forth a claim of negligence, alleging that the Defendants owed Wren the duty of exercising reasonable care when repairing the drive shaft in 1989, and, further, that they breached that duty, thus causing the punch press to break in 1994. The Plaintiffs argue that *Chemtrol* is not applicable to that claim, because it arises out of allegations of negligent repair by the Defendants, rather that being based on the premise that the machine was negligently manufactured in the first instance. Although the Court agrees with the Plaintiffs that *Chemtrol* arose out of allegations of negligence in the manufacturing process, while the Plaintiffs' Fifth Claim for relief is based upon the Defendants' actions in repairing a machine they had previously constructed, that difference does not prevent this Court from concluding that the principles established by *Chemtrol* are controlling with regard to this claim.

Although no Ohio court has, post-*Chemtrol,* expressly addressed the issue of whether a commercial entity can maintain an action, arising out of the alleged negligent repair of a product, when the only harm claimed is economic loss and damage to the product itself, courts in other jurisdictions, which follow principles similar to those set forth in *Chemtrol,* have held that such an action cannot be maintained. For instance, in *Sea–Land Service, Inc. v. General Electric Co.,* 134 F.3d 149 (3rd Cir. 1998), the plaintiff, the owner of a vessel, alleged that the defendant had negligently repaired a diesel powered generator on the vessel, causing both damage to the genera-

tor and the ship to be inoperable while the generator was being repaired. The plaintiff, invoking admiralty jurisdiction, sought to recover for the damage to the generator and its lost profits for the period that the vessel had been inoperable. The District Court granted summary judgment in favor of the defendant, and the Third Circuit affirmed, concluding that, under *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986),[9] an action for negligent repair to recover for economic loss or for damage to a product itself, was not available under admiralty law. In *Alco Standard Corp. v. Westinghouse Electric Corp.,* 206 Ga.App. 794, 426 S.E.2d 648 (1992), the plaintiff employed the defendant to repair three autotransformers, which were used to start a large electric motor. Shortly after the defendant had completed its work, two of the three autotransformers failed, causing an interruption to the plaintiff's business operations and a resultant economic loss, as well. The plaintiff brought an action, alleging, *inter alia,* that the defendant had negligently repaired the autotransformers. The Georgia Court of Appeals held that an action for negligent repair could not be maintained when the plaintiff sought to recover only for economic loss. *See also, Thurin v. A.O. Smith Harvestore Products, Inc.,* 221 Wis.2d 220, 584 N.W.2d 233 (1998) (action for negligent repair unavailable when plaintiff has suffered only economic loss and/or damage to the product itself).

This Court finds the result reached and the rationale employed in those decisions to be persuasive. Moreover, in *Cincinnati*

8. Defendants also argue that *Chemtrol* is applicable to breach of warranty claims, which are predicated upon a tort theory. Even assuming the Defendants are correct, that argument has no application in this litigation, since the Plaintiffs' breach of warranty claims are based on a contract theory, rather than upon tort. Paragraph 2 of the syllabus in *Chemtrol* expressly states that a plaintiff may bring a contract action for breach of warranty.

9. In *East River,* the Supreme Court concluded that an action for strict liability in tort or negligence was unavailable, under admiralty law, to the purchaser of a product who had suffered only harm in the form of economic loss or damage to the product itself. In reaching the identical conclusion in *Chemtrol,* the Ohio Supreme Court relied upon *East River,* along with decisions from other jurisdictions.

*Gas & Electric Co. v. Westinghouse Electric Corp.*, 165 F.3d 26, 1998 WL 661142 (6th Cir.1998), the Sixth Circuit applied *Chemtrol* in an analogous situation. Therein, the plaintiff had contracted with the defendant to manufacture and to install a turbine generator, which included a hydrogen cooler, at the Zimmer Power Station. The plaintiff alleged that, during the installation process, the defendant had negligently failed to weld certain shims, spacers and/or washers, by which the cooler was attached to the generator, and that, after the generator had become operational, one of those parts broke loose, causing substantial damages to the generator. In affirming the District Court's grant of summary judgment in favor of the defendant, the Sixth Circuit concluded that *Chemtrol* precluded the plaintiff from maintaining a claim for negligent installation, when the plaintiff sought to recover compensation only for the damage to the product that had been installed and for resulting economic loss.

Finally, the Court does not find the cases cited by the Plaintiffs, *Nolen v. Standard Oil Co.*, 63 Ohio App.3d 746, 580 N.E.2d 49 (1989), and *Robbins Motor Transp. v. Key GMC Truck Sales*, 56 Ohio App.2d 165, 381 N.E.2d 1329 (1978), to be persuasive.[10] In those cases, the respective appellate courts elaborated upon the measure of damages available to a plaintiff, who alleged that the defendant had negligently repaired his motor vehicle, and concluded that the plaintiff could recover damages flowing both from the loss in the value of the vehicle and from the loss of the use of the vehicle. Although those two cases support the Plaintiffs' argument that it may recover the economic loss it suffered as a result of Defendants' alleged negligent repair of the drive shaft in 1989, this Court declines to follow those decisions. The decision in *Robbins Motor Transp.* predated *Chemtrol* by more than a decade. Moreover, the court based its decision on *Hayes Freight Lines v. Tarver*, 148 Ohio St. 82, 73 N.E.2d 192 (1947), wherein the Ohio Supreme Court established the damages that could be recovered by a plaintiff whose motor vehicle had been damaged in a collision with that being driven by the defendant. In addition, it does not appear that the defendant in *Robbins Motor Transp.* argued that damages for economic loss are not available in a case arising out of the negligent repair of a vehicle, in the absence of a personal injury or damage to some property other than the vehicle in question. Although *Nolen* was decided shortly after the Ohio Supreme Court decided *Chemtrol*, the *Nolen*

---

**10.** Plaintiffs raise two other arguments, neither of which has merit. *First*, they point to the fact that, during the first incarnation of this litigation, Judge Welbaum overruled the Defendants' motion seeking summary judgment on Plaintiffs' negligent repair claim. Although the copy of the judicial officer's decision supports that assertion, this Court does not consider that decision to be binding. Since Judge Welbaum's decision did not resolve the lawsuit pending before him, it was subject to revision at any time. *See* Ohio R.Civ.P. (54)(B); *Lee v. Joseph Horne Co., Inc.*, 99 Ohio App.3d 319, 650 N.E.2d 530 (1995) (decision which does not dispose of all claims in a lawsuit is subject to revision at any time, even though compliance with Ohio RCiv.P. 60(B) is lacking). Although the Plaintiffs have not expressly argued that the doctrine of the law of the case prevents this Court from reconsidering Judge Welbaum's prior decision, such an argument would be unavailing. Since a decision overruling a motion for summary judgment is interlocutory, Ohio courts have frequently indicated that a trial court is free to reconsider such a decision, even *sua sponte. See e.g., Minnick v. Lee*, 1999 WL 63663 (Ohio App.1999) (and cases cited therein). Therefore, since Judge Welbaum could have reconsidered his decision in the former incarnation of this litigation, there is no reason why this Court cannot do the same, in this latest chapter.

*Second*, the Plaintiffs argue that, in *Chemtrol*, the Ohio Supreme Court did not address a lawsuit premised upon "an active act of negligence." *See* Doc. # 20 at 5. This Court does not agree. In paragraph 2 of the syllabus, the *Chemtrol* court clearly held that a negligence claim could not be maintained. Moreover, that litigation was based upon an alleged "active act of negligence" by Midland–Ross, to wit: designing an industrial dryer in which the air intake fan continued to operate after the dryer had shut down, thus allowing one part to damage another.

court discussed neither that decision nor the principles established therein. Rather, the *Nolen* court merely cited *Robbins Motor Transp.*

Accordingly, based upon the foregoing, this Court sustains the Defendants' Motion for Partial Summary Judgment (Doc. # 19), to the extent that, with that motion, they seek summary judgment on Plaintiffs' Fifth Claim for Relief (negligent repair) and that aspect of their Ninth Claim for Relief which is predicated upon that claim.

The Defendants also argue that they are entitled to summary judgment on the Plaintiffs Sixth through Eighth Claims for Relief and the aspect of their Ninth Claim for Relief based upon those claims, because there is no evidence of an express or implied warranty or any other agreement between the parties, upon which those claims could be based. The flaw in the Defendants' argument is that it fails to recognize the initial burden placed upon a party moving for summary judgment. As the Sixth Circuit noted in *Boretti, supra,* the moving party has the initial "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." 930 F.2d at 1156. *See also, Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. A party does not discharge that burden through counsel's statement that the evidence does not raise a genuine issue of material fact.

Accordingly, this Court overrules the Defendants' Motion for Partial Summary Judgment (Doc. # 19), to the extent that, with that motion, they seek summary judgment on Plaintiffs' Sixth through Eighth Claims for Relief and that aspect of their Ninth Claim for Relief which is predicated upon those claims.

As a result of this Decision, the Plaintiffs' Sixth through Eighth Claims for Relief, as well as that aspect their Ninth Claim for Relief which is predicated upon those claims, remain to be resolved in this litigation. In addition, although the parties apparently agree that the Plaintiffs'

First through Fourth Claims for Relief, and the aspect of their Ninth Claim for Relief which is predicated upon those claims, are not viable, those claims have not been dismissed.