**Henry HOLMES, Plaintiff,**

**v.**

**FSR/TENNESSEE AFFORDABLE HOUSING FOUNDATION d/b/a Raleigh Woods Apartments, PMG Real Estate Management and Consulting, Boss Service and Supply, Inc., and Sherman Hull, Defendants.**

No. 98–2879–TU–(MI)/BRE.

United States District Court,
W.D. Tennessee,
Western Division.

May 30, 2000.

---

**2.** The application for attorney fees shall be made in accordance with the Local Rules of

.Court.

John J. Heflin, III, Kenneth P. Jones, Bourland, Heflin, Alarez & Minor, James Francis Barna, The Waggoner Law Firm, Memphis, TN, for Henry Holmes, plaintiffs.

Brian L. Kuhn, Ford & Harrison, Herbert E. Gerson, Timothy S. Bland, Ford & Harrison, LLP, Memphis, TN, for FSR/Tennessee Affordable Housing Foundation, D/B/A Raleigh Woods Apartments; PMG Real Estate Management and Consulting, defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McCALLA, District Judge.

Plaintiff Henry Holmes brought this action against defendants FSR/Tennessee Affordable Housing Foundation d/b/a Raleigh Woods Apartments ("FSR"), PMG Real Estate Management and Consulting ("PMG"), Boss Service and Supply, Inc. ("Boss"), and Sherman Hull alleging discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 1981; and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. § 4–21–101 *et seq.* In a prior order, the Court dismissed all claims against Sherman Hull and Holmes' § 1981 and THRA claims. Presently before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I. *Summary Judgment Standard*

The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will determine what issues of fact are material. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986). Once met, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue of triable fact. *See* Fed.R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the nonmoving party. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. *Background*

The following facts are not in dispute. Prior to March 1997, Henry Holmes, an African American male who was sixty years old during the relevant time period, was employed by Sunshine Management as a maintenance technician at Raleigh Woods Apartments ("Raleigh Woods") in Memphis, Tennessee. In March 1997, PMG entered into a management contract with FSR, the owner of Raleigh Woods, and assumed the management duties associated with the property. Under this new arrangement, Boss, a wholly-owned subsidiary of PMG, began to oversee the on-site management and maintenance staffing of Raleigh Woods. Sherman Hull was hired as Raleigh Woods' property manager and was supervised by Mark Tiffany, a regional property manager for PMG.

As a result of this new arrangement, Sunshine Management discharged all of its employees who worked at Raleigh Woods, including Holmes. Hull, however, asked the former Sunshine Management employees to continue working at Raleigh Woods under PMG's management. Holmes agreed to continue to work as a maintenance technician.[1] Holmes received a monthly salary of $1850 and performed general maintenance work including repairing appliances, working on heating and air conditioning units, and maintaining the grounds.

In late March or early April 1997, Hull hired Dennis Cain, an African American male, as maintenance supervisor. At the time of the hire, Cain possessed a universal HVAC certification. An HVAC certification is a certification from the Environmental Protection Agency allowing the holder to work on refrigerant units weighing more than one-hundred pounds and to purchase Freon.[2] A "universal" HVAC certification is the highest HVAC certifica-

tion available. Holmes did not possess an HVAC certification. Because each of the 427 units within Raleigh Woods had its own central HVAC unit, the maintenance team spent a great deal of time repairing air conditioning units. Although Holmes could not directly handle refrigerants or Freon, he assisted Cain in repairs that required such handling. In addition, Holmes performed general maintenance work on air conditioners while unsupervised.

Sometime in early May 1997, Hull discharged Anthony Jenkins, an African American maintenance technician, allegedly for budgetary reasons. Jenkins was not HVAC certified and, according to Hull, was the least qualified of the maintenance technicians. A week or two later, Hull hired Jerry Wood, a forty-eight year old Caucasian male, as a maintenance technician. Wood received a monthly salary of $1800 and was provided an apartment valued at approximately $400. Wood possessed a universal HVAC certification. Around that same time frame, Holmes tore a muscle in his arm while attempting to move a large appliance in an apartment unit. As a result of the injury, he took a leave of absence from approximately May 13, 1997 through June 30, 1997.

On May 28, 1997, Michael Gerken was hired as a maintenance technician for the Raleigh Woods complex. Gerken, a thirty-four year old Caucasian male, was not HVAC certified. On August 7, 1997, Hull met with Holmes to inform him that his position was being terminated for budgetary reasons.

Holmes filed this action on October 5, 1998 asserting that defendants unlawfully discriminated against him in violation of Title VII, the ADEA, § 1981, and the THRA. Specifically, the complaint alleges that defendants discriminated against him

---

1. The parties dispute which entity or entities actually employed Holmes. Holmes contends that Boss, PMG, and FSR employed him as a maintenance technician, while defendants argue that Boss was Holmes' only employer.

2. A $25,000 fine may be levied if an individual handles refrigerant units or possesses Freon without proper certification.

based on race and age when they paid him a lower salary than Wood, a similarly situated employee, and when they terminated him. In an order dated April 15, 1999, the Court dismissed all claims against Hull and the § 1981 and THRA claims.

### III. *Analysis*

Defendants move for summary judgment with respect to the termination claims brought under Title VII and ADEA. In the alternative, they argue that summary judgment is appropriate as to all claims against FSR because FSR is not Holmes' employer. The Court will address each argument in turn.

### A. *Title VII Claim*

The defendants assert that summary judgment should be granted on Holmes' Title VII claim involving his termination on August 7, 1997. Specifically, they assert that Holmes cannot meet his burdens under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In response, Holmes contends that summary judgment is inappropriate because he has produced direct evidence of racial discrimination.

■ The *McDonnell Douglas* framework is inapplicable where the plaintiff produces direct evidence of discriminatory animus. *See LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379 (6th Cir.1993). Direct evidence consists of evidence "which, if believed, proves the existence of improper discrimination animus without inference or presumption." *Williams v. United Dairy Farmers*, 20 F.Supp.2d 1193, 1198 (S.D.Ohio 1998) (citations omitted). Thus, if direct evidence exists, the plaintiff no longer needs the inference of discrimination that results from establishing the *McDonnell Douglas* prima facie case. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir.1995) (citations omitted).

■ Evidence of racial slurs made by a decision-maker is direct evidence of dis-

crimination "sufficient to get the plaintiff's case to the jury." *Talley*, 61 F.3d at 1249. For example, in *Talley*, the Sixth Circuit held that evidence of the decision-makers' repeated use of the terms "nigger" and "stupid nigger"· constituted direct evidence precluding summary judgment. *Id.* at 1248–49. To be considered a decision-maker, a supervisor must be "meaningfully involved" in the adverse employment decision at issue. *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237–38 (6th Cir.1995) (holding that the intermediate supervisor was a decision-maker despite the fact that he lacked authority to independently terminate plaintiff because he consulted closely with the ultimate decision-maker regarding the decision to terminate plaintiff).

■ In this case, Holmes has produced the affidavit of Donna Benefiel, a former employee at Raleigh Woods who worked in the management office with Hull. The affidavit states that Hull frequently referred to African Americans as "niggers" and "those people." In addition, the affidavit states that, when Hull became aware that Benefiel was pregnant and that the father was African American, he stated "[y]ou don't want that" and "[t]here is nothing else to do—you've got to get an abortion." (Benefiel Aff. ¶ 9.) The affidavit further states that, after making these comments, Hull offered to pay for the abortion.

Additionally, the evidence indicates that Hull was "meaningfully involved" in the decision to terminate Holmes and, thus, should be considered a decision-maker. Although he did not possess the authority to independently terminate an employee, the record shows that Hull and Tiffany, the ultimate decision-maker, consulted closely regarding all employment decisions. In his deposition, Tiffany testified that, though Tiffany approved the decision to terminate Holmes, Hull was the primary decision-maker. Hull also testified that he and Tiffany jointly decided to terminate Holmes.

The evidence regarding Hull's frequent use of racial slurs, if believed, constitutes direct evidence "requiring the conclusion that unlawful discrimination was at least a 'motivating factor' for the employer's action." *Talley*, 61 F.3d at 1248 (citing *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114–15 (6th Cir.1987)). As such, summary judgment is denied with respect to Holmes' termination claim under Title VII.

### B. *ADEA Claim*

Like the Title VII claim, defendants contend that summary judgment is appropriate on Holmes' termination claim under the ADEA because Holmes cannot meet his burden under the *McDonnell Douglas* framework. Because Holmes has not produced direct evidence of age discrimination, analysis of his ADEA claim under the *McDonnell Douglas* burden-shifting framework is appropriate. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir.1998) (applying *McDonnell Douglas* framework to ADEA claims).

Under this framework, the plaintiff must establish a prima facie case of discrimination, thereby creating a presumption of discrimination. To establish a prima facie case, the plaintiff must show that (1) he is a member of a protected class; (2) he was subject to an adverse employment decision; (3) he was qualified; and (4) he was replaced by someone outside the protected class or, in the alternative, was treated differently from similarly situated members of the unprotected class. *See Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 728–29 (6th Cir.1999) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992)).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action.

*See Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir.1996). It is not necessary that the defendant prove a nondiscriminatory reason, but need merely articulate a valid rationale. *See id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

The burden of production then shifts back to the plaintiff who must rebut the defendant's articulated reason with evidence sufficient to support an inference of pretext. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hicks*, 509 U.S. at 510–12, 113 S.Ct. 2742. At all times, the burden of persuasion remains with the plaintiff. *See Talley*, 61 F.3d at 1246 (citing *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742). Because Holmes has failed to show that defendants' proffered reason is a pretext for discrimination, summary judgment is appropriate.

▆▆▆ Defendants have produced a legitimate, non-discriminatory reason for their decision to terminate Holmes.[3] Specifically, they state that they terminated Holmes because the management expenses of Raleigh Woods were over budget.[4] They assert that, in an effort to bring the expenses within budget, they decided to terminate Holmes because he was the least qualified maintenance technician in that he was not HVAC certified. Defendants' proffered reason is sufficient to rebut the presumption of discrimination. *See Hartsel*, 87 F.3d at 800. Therefore, the burden shifts to Holmes to produce sufficient evidence such that a reasonable juror could reject defendants' reasons as a pretext for discrimination. *See Manzer v. Diamond Shamrock Chems, Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). Holmes may show pretext by demonstrating by a preponderance of the evidence one of three things: "(1) that the proffered reasons had no basis in fact,

---

3. For the purposes of this motion, the Court assumes that Holmes has met his prima facie burden.

4. Because Raleigh Woods was operated under the federal affordable housing program, its budget had to be submitted to and approved by the Department of Housing and Urban Development ("HUD").

(2) that the proffered reasons did not actually motivate [the adverse employment decision], or (3) that they were insufficient to motivate [the adverse employment decision]." *Id.* 1084. Holmes has failed to do this.

First, Holmes attempts to show that defendants' proffered reason has no basis in fact by producing evidence regarding Raleigh Woods' budget. Holmes points out that, in June 1997, the actual monthly "maintenance/general salary" expenses did not exceed the budgeted monthly "maintenance/general salary" expenses. Additionally, Holmes produces evidence showing that, throughout the monthly budget reports in 1997, the actual year-to-date "maintenance/general salary" expenses did not exceed the budgeted year-to-date "maintenance/general salary" expenses by as great as margin as other segments of the budget did. These showings, however, do not detract from the fact that the actual year-to-date "maintenance/general salary" budget did, in fact, exceed the projected year-to-date "maintenance/general salary" budget or that the actual year-to-date total budget exceeded the projected year-to-date total budget. In addition, Holmes' concentration on the "maintenance/general salary" segment ignores the "maintenance/apartment" segment of the budget, which was consistently over budget by a significant amount.

Second, Holmes attempts to show that defendants' proffered reason has no basis in fact by presenting evidence that defendants advertised an opening for a maintenance technician in the local newspaper approximately two months after Holmes' termination. In presenting this evidence, Holmes ignores the fact that an opening in the maintenance department resulted from Cain resigning in late August. Thus, the newspaper advertisements do not disprove the existence of budgetary problems.

Holmes has failed to meet his burden of showing pretext and, thus, summary judgment is appropriate with respect to the termination claim under the ADEA.

### C. *FSR's Status as an Employer*

Defendants final argument is that summary judgment should be granted as to all claims against FSR because FSR is not an employer of Holmes. In making this argument, defendants rely on the undisputed facts that, although FSR owned Raleigh Woods, it had a management contract with PMG during the relevant time period. Furthermore, defendants contend that FSR had no input into PMG's or Boss' decisions to hire, discipline, or discharge any employee at Raleigh Woods.[5]

In response, Holmes argues that FSR was involved in the terms and conditions of employment at Raleigh Woods. In support of his argument, he points to the Maintenance Person's Agreement,[6] which states the following:

> You are an employee of Raleigh Woods Apts. BOSS Service & Supply, Inc. is a payroll service provided to that property. Your employment policies and procedures will be implemented by BOSS Service & Supply, Inc. Since PMG is the managing agent for the owner of the property, you will be supervised by PMG Staff and follow PMG property policies and procedures. *The property pays for your salary, benefits and rent,* only if an apartment is part of your compensation.... *In effect, you are an employee of that property.*

(Holmes Dep. Ex. 2 (emphasis in original).) Additionally, Holmes relies on evidence in-

---

**5.** To establish that FSR had no involvement in employment decisions, defendants rely on FSR's responses to Holmes' interrogatories where FSR repeatedly stated the following: "FSR has no knowledge of the events of this lawsuit. FSR had a management contract with PMG for management of Raleigh Woods

Apartments. FSR had no input into PMG's or Boss' decision to hire, discipline or discharge any employee at Raleigh Woods." (Defs.' Mem. Supp. Summ. J. Ex. 1.)

**6.** The maintenance agreement was printed on Boss letterhead.

dicating that the president of FSR approved Raleigh Woods' management budget and visited Raleigh Woods four times a year to inspect the property. Lastly, Holmes relies on evidence showing that Hull carbon copied his resignation letter dated August 26, 1997 to the president of FSR in addition to PMG supervisors.

■ In order to hold FSR liable under Title VII, Holmes must show that FSR is an employer as defined by the statute.[7] *See Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 992 (6th Cir. 1997). It is undisputed that FSR was not Holmes' direct employer. Although most employment discrimination cases involve direct employers, courts have created the single employer, joint employer, and agency doctrines whereby a defendant may still be considered an employer although the defendant does not directly employ the plaintiff. *See id.* at 993. Because a genuine issue remains regarding whether the joint employer doctrine applies to this case, summary judgment is inappropriate.

The joint employer doctrine has been described as follows:

> The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

*Id.* at 993 n. 4 (citing *NLRB v. Browning–Ferris Indus. of Penn., Inc.,* 691 F.2d 1117, 1123 (3d Cir.1982)). Determining whether an entity retained sufficient control of the terms and conditions of employ-

ment is a question of fact. *See Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1360 (11th Cir.1994).

Although defendants contend that FSR had no control over the terms and conditions of Holmes' employment, the Maintenance Person's Agreement indicates otherwise. As stated above, the agreement states that a maintenance person was an employee of the property and that the property paid the maintenance person's salary, benefits, and rent. Because FSR owns the property, the Court finds that a genuine issue exists regarding FSR's involvement in the terms and conditions of employment. *See id.* As such, a question of fact remains as to whether FSR is a joint employer of Holmes. Thus, summary judgment is not appropriate.

### IV. *Conclusion*

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment with respect to the ADEA claims, but DENIES it in all other respects.[8]

---

7. Title VII defines the term employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...." 42 U.S.C. § 2000e(b).

8. The Court notes that defendants did not address Holmes' unequal pay claims in their motion for summary judgment. As a result, Holmes' Title VII and ADEA claims based on disparity in compensation remain.