Doris E. NEELY, Plaintiff,

v.

**GOOD SAMARITAN HOSPITAL,**
Defendant.

No. 3:02cv124.

United States District Court,
S.D. Ohio,
Western Division.

July 9, 2007.

James R. Greene, III, James R. Greene III & Associates, Dayton, OH, for Plaintiff.

Jennifer Lee Brogan, John Francis Haviland, Karen T. Dunlevey, Bieser, Greer & Landis LLP, Dayton, OH, for Defendant.

DECISION AND ENTRY OVERRULING DEFENDANTS MOTION TO ALTER OR AMEND JUDGMENT (DOC. # 24), TREATED AS A MOTION TO RECONSIDER PRIOR DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC # 23) AND TO ENTER FINAL JUDGMENT FOR THE DEFENDANT; CONFERENCE CALL SCHEDULED

RICE, District Judge.

The instant litigation arises out of the alleged reduction and capping of salary, change in job description and denial of training opportunities for plaintiff Doris E. Neely by her employer, Good Samaritan Hospital ("Good Samaritan"). Plaintiff,

who is African–American, was hired by Good Samaritan in 1981 as a dispatcher. In July of 1990, Plaintiff's job responsibilities as First Watch Dispatcher were altered to include the duties of the telephone operator from the hours of midnight to 6:00 a.m. Based on the recommendation of Mr. Harry Sprowls, Coordinator of Safety and Security, Plaintiff's job class number was changed from 0191 to 0015, effective July 2, 1990, and her job title was changed to Control Officer. Plaintiff also received a 5% increase in pay to compensate her for the added responsibilities. From 1990 to 1999, Plaintiff's job title was Control Officer, and her pay range was the same as Security Officers. In 1999, the Defendant raised the pay range of Security Officers but capped the Plaintiff's pay range. The Defendant subsequently refused to give the Plaintiff any pay increases. In her Complaint, Plaintiff alleged that Good Samaritan decided to reduce her salary, to cap her pay increases, and to change her job description, without any notice to her and without any decrease in her job responsibilities.

On March 20, 2002, as a result of these alleged actions by Defendant, Plaintiff initiated this litigation, setting forth five causes of action against Good Samaritan, to wit: (1) claims of racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and 42 U.S.C. § 1981 (Count One); (2) state law claims of race discrimination, harassment and hostile work environment, in violation of Ohio Rev.Code § 4112.02 and 4112.99 (Count Two); (3) a state law claim of retaliation, presumably in violation of Chapter 4112 (Count Three); (4) a state

law claim for breach of an oral contract (Count Four); and (5) a state law claim for retaliation in violation of Ohio public policy (Count Five) (Doc. # 1). On June 4, 2003, Defendant moved for Summary Judgment on all counts. (Doc. # 11). In an Order dated September 29, 2003 (Doc. # 23), the Court Sustained the Defendant's Motion for Summary Judgment as to Counts Two through Five in their entirety, and partially Sustained and partially Overruled Defendant's Motion for Summary Judgment as to Count One. Specifically, the Court ruled that there existed sufficient evidence to create a genuine issue of material fact, regarding whether the Defendant had discriminated against the Plaintiff, on the basis of her race, when the Defendant decided to cap the Plaintiff's pay range at the same time that it raised the pay range of Security Officers.

Pending before the Court is Defendant's Motion to Alter or Amend Judgment[1], treated as a Motion to Reconsider Prior Decision on Defendant's Motion for Summary Judgment and to Enter Final Judgment for the Defendant. (Doc. # 24). For the reasons assigned, Defendant's Motion is OVERRULED.

## I. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548,

---

**1.** Defendant erroneously moves the Court pursuant to Civil Rule 59(e). That Rule applies only where all issues have been decided and final judgment has been entered. For the purposes of this decision, the Court will treat Defendant's Motion as a one seeking recon-

sideration of the Court's earlier decision overruling Defendant's Motion for Summary Judgment as to Count One, correctly relying on Civil Rule 54(b), which allows for revision of any undecided claims prior to the time final Judgment has been entered.

91 L.Ed.2d 265 (1986). Of course, the moving party:

> ... always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more

than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, if the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726.

■ In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath &*

*Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II. *Defendant's Motion for Reconsideration of Plaintiff's Race Discrimination Claim Based on the Capping of Plaintiff's Pay Range While Raising the Pay Range of Security Officers*

In *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth a systematic paradigm for courts to analyze claims of discrimination brought pursuant to Title VII. In lieu of direct evidence of discrimination, the *McDonnell Douglas* framework requires the Plaintiff to establish a prima facie claim of discrimination at the outset. *See id.* at 802, 93 S.Ct. 1817. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the alleged discriminatory action. *Id.* "If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. The ultimate burden of persuasion remains at all times with the plaintiff." *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (citations and internal quotations omitted).

To establish a prima facie claim of racial discrimination under Title VII, a plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the [promotion, job, training, title, raise, etc.] which she sought, (3) suffered an adverse employment decision, and (4) others, similarly situated, who were not members of the protected class, were treated differently (i.e., herein, her pay range was capped where the pay range of others in like circumstances was raised). *See id.; see also McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

If the plaintiff is able to make a prima facie showing of discrimination, she "in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). In that case, the burden of producing evidence of a nondiscriminatory reason for the adverse decision falls on the defendant employer. *See id.* at 506–07, 113 S.Ct. 2742. This is merely a production burden, not one of persuasion. *See id.* at 507, 113 S.Ct. 2742.

█ In the event the defendant fails to meet its burden of production, the presumption created by the plaintiff's prima facie case requires a finding for the plaintiff. *See id.* at 506, 113 S.Ct. 2742. If, however, the defendant proffers such a justification, while an *inference* of discrimination may still be drawn from the plaintiff's prima facie evidence, the mandatory *presumption* of discrimination drops from the case. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). It then falls on the plaintiff to rebut the defendant's proffered justification in one of three ways. To raise a genuine issue of material fact about the employer's explanation, the plaintiff is required to produce

evidence that; (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the employer to take the adverse action, or (3) the proffered reasons were insufficient to motivate the taking of the adverse action. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

■ The Defendant encourages the Court to sustain its Motion for two reasons: *first*, the Plaintiff's job of Dispatcher (or Control Officer as the Plaintiff characterizes it) is not substantially similar to that of a Security Officer; and, *second*, even were it substantially similar, the Defendant has articulated a legitimate, non-discriminatory reason for capping the Plaintiff's pay range at the same time the Defendant raised the pay range of Security Officers, and the Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact that the Defendant's reason is pretextual. Neither argument is persuasive.

In attempting to persuade the Court that the Plaintiff's job position is not similarly situated to that of a Security Officer, the Defendant relies heavily on the Court's prior observation that the job qualifications, responsibilities, and control numbers of the Defendant's position and that of the Security Officer are different. (Doc # 24 at 2–3, citing Doc # 23 at 15). This reliance is in error. In the paragraphs immediately following that relied upon by the Defendant, the Court noted that, from 1990 to 1999, the Defendant chose to ignore the differences between the two jobs. (Doc. # 23 at 15). "Upon review of the evidence, it is unclear to the Court whether this decision [to employ exclusively sworn Officers to work in the Security Department] resulted in a change to the Security Officer's duties, such that it is now reasonable to pay Security Officers at a higher rate than Control Officers. Although this may be the case, the Court cannot decide, as a matter of law, that Plaintiff, a Control Officer, is no longer similarly situated with Security Officers, for the purpose of determining her pay scale." (Doc. # 23 at 16).

The Defendant argues that the Security Officers assumed more job responsibilities in 1999, and that these additional responsibilities justified the change in pay range. (Doc. # 24 at 2). The only new job responsibilities the Defendant articulates are those formerly performed by the "Dispatcher." (Doc. # 24 at 2, citing the Affidavit of Lisa Drees ¶ 3). However, the Plaintiff contends that "since 1981 …, in order for any 'officer' to be qualified for his position he has to perform the duties of a dispatcher post." (Doc. # 25, Affidavit of Doris Neely ¶ 7).[2]

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the party against whom the motion is directed. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If the assertion of the Plaintiff is true, then the Security Officers assumed no new responsibilities in 1999 that they did not already have in 1990, when the Defendant treated the Plaintiff's position as substantially similar to that of a Security Officer for the purposes of determining pay range. The Court must therefore conclude that the Plaintiff has created a genuine issue of material fact as to whether Security Offi-

**2.** The Defendant has claimed that at least portions of the Plaintiff's Affidavit are inadmissible, since she has insufficient personal knowledge to testify to the facts presented in her affidavit. However, since the Defendant does not dispute the Plaintiff's personal knowledge of the facts raised in the Affidavit relevant to this discussion, that issue need not be addressed.

cers are similarly situated, for the purposes of calculating her pay range.

In arguing that it has a legitimate, non-discriminatory reason for raising the pay range of the Security Officer while capping the pay range of the Plaintiff, the Defendant relies on the same evidence it used for its argument that the Dispatcher position and the Security Officer position were not substantially similar. In addition, the Defendant presents evidence, in support of its legitimate, non-discriminatory reason, that some of the Security Officers at the Hospital were African–Americans and benefitted from the 1999 raise in pay. (Doc # 26 at 2). While this evidence might allow a fact finder to infer that the Defendant's proffered legitimate, non-discriminatory reason was not a pretext for discrimination and may ultimately win the day for the Defendant on the merits, it does not resolve, for purposes of this motion, what the Court has already determined to be a genuine issue of material fact, to wit: whether Defendant's proffered non-discriminatory reason for capping Plaintiff's pay range at while at the same time raising the pay range of Security Officers is pretextual. Given the same facts, a jury could reasonably infer that the Defendant made a decision that benefitted some members of a protected class and then made a different decision that discriminated against a member of the same protected class. *See Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). Since the Court must draw all reasonable inferences in favor of the non-moving party (*Anderson,* 477 U.S. at 255, 106 S.Ct. 2505), it cannot draw the inference urged upon it by the Defendant, in the course of ruling on a Motion for Summary Judgment.

The Defendant also uses evidence that some of the Security Officers belong to the same protected class as the Plaintiff to support the contention that the Plaintiff failed to provide sufficient evidence to establish the fourth prong of her *prima facie* case. (Doc. # 26). The Defendant is incorrect. "To establish a prima facie claim of racial discrimination under Title VII, a plaintiff must show that: ... (4)[she] was ... treated differently than similarly situated, *non-protected* employees." *Newman,* 266 F.3d at 405 (citing *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999) (emphasis added)). As long as some of the similarly situated employees, in this case Security Officers, are not members of the Plaintiff's protected class, the Plaintiff has established her *prima facie* case. In addition, Defendant has also misunderstood the Plaintiff's claim. In this case, the alleged discriminatory act is *not* the Defendant's decision to increase the pay range of Security Officers. (Doc # 26). Rather, the alleged discriminatory act is the Defendant's decision to cap the pay range of the Plaintiff while increasing the pay range of the Security Officers, persons she claims are similarly situated in comparison to her. (Doc. # 23 at 20).

Lastly, the Defendant contends that the Plaintiff has offered no evidence to suggest that the Defendant's legitimate, non-discriminatory reason is merely a pretext for discrimination. (Doc# 26). To raise a genuine issue of material fact about her employer's explanation, the plaintiff is required to produce evidence that; (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the employer to take the adverse action, or (3) the proffered reasons were insufficient to motivate the taking of the adverse action. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

When the Court ruled on the Defendant's original Motion for Summary Judgment, it concluded that the Plaintiff had

successfully demonstrated that a reasonable jury could find that the Defendant's legitimate, non-discriminatory reason lacked credence. (Doc. # 23 at 19). In evaluating the evidence, including the new evidence presented by both the Plaintiff and the Defendant, the Court sees no reason now to conclude differently. The Defendant, to bolster its claim of a legitimate, non-discriminatory reason, introduces evidence that Dispatcher duties were assigned to Security Officers in 1999, thus justifying an increase in their pay range and capping that of the Plaintiff. (Doc. # 24 at 2). The Plaintiff offers evidence that this has no basis in fact, that in fact the ability to perform a Dispatcher's duties had been a requirement of all Security Officers since 1981. (Doc. # 25, Affidavit of Doris Neely ¶ 7).

The Defendant has offered evidence about the manner in which it evaluated compensation in 1999 (when the Defendant decided to cap the pay range of the Plaintiff and to raise that of Security Officers) (Doc. # 24 at 3), but it has offered nothing to explain how the circumstances in 1999 were different from those of 1990 (when the Defendant first decided that the Plaintiff's pay should be equivalent to that of a Security Officer). As noted above, the evidence presented by the Defendant regarding the presence of African–Americans in the classification of Security Officers might allow a jury to infer that the Defendant did not in fact discriminate on a racial basis, but other inferences might also reasonably be drawn.

■ "[O]nce a plaintiff has [created a genuine issue of material fact as to] the reasons offered by the defendant, the fact-finder is permitted to infer discrimination. A plaintiff does not need to introduce additional evidence of discrimination to prevail on the merits." *Kline v. TVA*, 128 F.3d 337, 347 (6th Cir.1997); *see Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Because the Plaintiff has created a genuine issue of material fact on the issue of whether the Defendant's proffered legitimate, non-discriminatory reason has no basis in fact, a jury may reasonably infer that the decisions to raise the pay range of Security Officers, but to cap that of the Plaintiff, were made due to discrimination of an impermissible nature.

For the foregoing reasons, Defendant's Motion to Alter or Amend Judgment, treated as a Motion to Reconsider Prior Decision on Defendant's Motion for Summary Judgment and to Enter Final Judgment for the Defendant (Doc. # 24), is OVERRULED.

Counsel will note that the Court has scheduled a telephone conference call for Monday, September 27, 2004, at 8:30 a.m. During that conference call, the Court and counsel will select a mutually convenient trial date for Plaintiff's remaining Claim, to wit: Defendant Good Samaritan Hospital discriminated against Plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and of 42 U.S.C. § 1981, the discrimination stemming from the Defendant's decision to cap the Plaintiff's pay range while at the same time raising the pay range of Security Officers. (Part of Count One).